# BALTIMORE AND OHIO RAILROAD COMPANY *vs.* FLORENCE E. KANE and JAMES W. KANE.

*Railroad company — Passengers — Contributory negligence per se — Passenger acting by Direction of Railroad official — Liability of Railroad Company — Prima facie Evidence — Burden of Proof — Province of Jury.*

Although a railroad company may have provided a platform where the trains regularly stop for the ingress and egress of passengers, it is not *per se* contributory negligence for a passenger to attempt to enter a train at a place other than the platform provided, in the absence of notice that passengers would be received only at such platform, and were prohibited from attempting to enter the cars at any other place.

Where a passenger is directed by a person wearing the uniform of the railroad company, and justifiably supposed to be an official, to take the train away from the platform, and he attempts to enter the train as directed, and is injured in consequence thereof, the railroad company is answerable.

Evidence that a person, wearing the uniform of the railroad company, said to a passenger: "We have telegraphed for an extra train," and then invited him into the waiting-shed, and, as an officer, directed him, when the train arrived at a place other than the platform, to go and take it, is sufficient *prima facie* evidence that such person was what he seemed to be, and the burden is imposed upon the company of disproving it.

An attempt by a passenger to enter a car in motion is not *per se* contributory negligence — it is a question to be determined by the jury from all the circumstances.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court. The exceptions taken, save the ninth, related to the admissibility of evidence, and their insertion is deemed unnecessary. The ninth exception was taken to rulings of the Court on the prayers.

*Ninth Exception.*—The plaintiffs offered the following prayer:

If the jury believe that the plaintiff, Florence Kane, was in possession of a ticket entitling her to ride over defendant's road from Curtis bay to Baltimore, and that with the purpose of returning to the city, she went with her husband and child to the station at Curtis bay about 8 o'clock p. m., on the 18th July, 1886, and that they found a train standing at the station, which was so filled that they could not get on it, and which extended the whole length of the platform adjoining the station ; and that the plaintiff and her husband were informed by one of the officials of defendant in the uniform of the company, and apparently having official connection with the running of the trains, that there would be another or extra train in about ten minutes, and that in a few minutes another train did appear coming from the direction of Baltimore, which passed the standing train by a siding and ran to a position some distance in rear of the standing train, (if they find such fact) and that the plaintiff and her husband were again told by the same person in the uniform of the company, there's your train, you had better go and get in it if you want seats, or words to that effect, and that thereupon the plaintiff, with her husband and child, walked from the station with a large crowd of people along and over a board walk or platform by the side of defendant's track until they came alongside the extra or special train, and to a point

where it was usual for people to board said train on similar occasions when a train was standing at the station, (if they find such fact;) and that the plaintiff, Florence Kane, while trying to get aboard said train, after it had stopped, was thrown from the step of the platform of a car, and injured by the cars being suddenly put in motion, and that the injury to her resulted directly from the want of the exercise of ordinary care and prudence on the part of the agents of the defendant, and not from the want of ordinary care and prudence on the part of the plaintiff contributing to the accident, then the plaintiff, Florence Kane, is entitled to recover for the injuries sustained, and such physical and mental suffering as they may find she endured in consequence thereof; and the jury are instructed, that what is meant by ordinary care and prudence on her part, is such care and prudence as an ordinarily prudent person would exercise under like circumstances.

The defendant offered the following ten prayers :

1. That there has been no evidence produced in the case legally sufficient to show that the accident to the plaintiff was directly caused by the negligence of the defendant, and the verdict of the jury must therefore be for the defendant.

2. That the plaintiff is not entitled to recover in this action, because the undisputed evidence shows that the negligence and want of due care on the part of the plaintiff, Florence Kane, directly contributed to the accident complained of, and the verdict of the jury must therefore be for defendant.

3. If the jury find from the evidence in the case, that the accident complained of was in any degree owing to the want of due care and caution at the time of the accident on the part of Mrs. Kane, directly contributing thereto, then their verdict must be for the defendant.

4. If the jury shall believe from the evidence that the accident was directly caused by the concurrent negligence of the plaintiff and the said defendant, and that it would have been avoided by due and proper care on the part of either said plaintiff or said defendant, then their verdict must be for the defendant, without regard to whose negligence was the greater.

5. If the jury shall believe from the evidence that the defendant, for the use of persons desiring to enter its cars at Curtis bay, had designated a specific place for its trains to stop for passengers, and had constructed thereat a safe and sufficient platform and station shed, and shall further find that on the evening of the accident, a train was obliged, in order to reach the said platform, to go round by the siding mentioned in evidence, to a point below the bath house, and back up to said platform, and that while said train was still moving down towards said point, the said Florence Kane attempted to get upon said train, and in doing so fell between the cars of said moving train, and was thereby injured, then the plaintiff is not entitled to recover.

5½. If the jury shall find from the evidence that there was negligence on the part of the defendant's agents in the management of the train which caused the accident complained of, but shall further find that there was a want of prudence and proper care on the part of Mrs. Kane, in attempting to get on the cars at the place, or at the time when she did, and that such want of prudence and proper care on her part, directly contributed to the accident, then the verdict of the jury must be for the defendant.

6. If the jury shall believe from the evidence that the defendant company had established at Curtis bay, a recognized place for its trains to stop and take passengers, and had erected thereat a safe and commodi-

ous station shed and platform, and shall further find that the plaintiff, Florence Kane, being anxious to get upon a train that had not reached the station before it should become filled, went down to a point where it was obliged to stop in order to back up to said station, and taking advantage of said stopping, attempted to get upon said train, and was hurt by the train suddenly moving, then the plaintiff cannot recover for said accident, and their verdict must be for defendant.

6½. It is incumbent on the plaintiff to prove that the injury to Mrs. Kane was caused entirely by the negligence of the defendant or its agents, and if they shall find that the injury complained of was caused in part by the attempt of Mrs. Kane to get on the train at a place other than an established station of the defendant corporation, and before the train which she attempted to get on had stopped for the reception of passengers, then the verdict of the jury must be for the defendant.

7. If the jury shall believe from the evidence that the trains of defendant always stopped at the regular station platform for passengers to get on, and that a safe and sufficient platform, and that there was nothing in the appearance of the track down by the bath house to suggest that it was meant as a place for passengers to get on trains, and that no authorized agent for defendant gave any special invitation or permission to so use it; and shall further find that the natural and only method by which the second train could be brought up to the said platform, was to go down to the track by the bath house and wait there until the first train had drawn out, and that this was the only purpose for which trains went down there; and shall further find that on the Sunday evening of the accident, a large number of people, anxious to secure seats in said train, endeavored to board said second train, both while it was coming down the siding, and when it had

come to a stop near the bath house, in order to get on the train before those who waited for it to stop at the regular platform, and that it was, while engaged in an attempt to get on the train, under these circumstances, and as the direct result of that attempt, that plaintiff was injured, then plaintiff cannot recover, even though the jury should believe that people in considerable numbers had, both on this evening and previous Sunday evenings, under the same circumstances, succeeded in getting on such trains at this point before they reached the platform.

8. That there has been no evidence offered, legally sufficient, to show that any authorized agent of the defendant gave any special invitation or permission of the kind spoken of in defendant's seventh prayer.

The Court (FOWLER, J.,) granted the plaintiffs' prayer, and the third, fourth, and fifth and a half prayers of the defendant, and rejected its first, second, fifth, sixth, sixth and a half, seventh and eighth prayers. The defendant excepted. The jury rendered a verdict for $8,750 in favor of the plaintiff, and judgment was entered thereon. The defendant appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, and IRVING, J.

*W. Irvine Cross,* and *John K. Cowen,* for the appellant.

"When the railroad company have provided safe and convenient means for passengers to get on and off the trains, if the passenger uses a way of his own choice in preference to that provided by the company, he will be responsible for accidents that happen in consequence." *Thompson on Carriers of Passengers,* 269.

If a company provides a platform or other safe means of exit from their cars, at a station, it is the duty of

passengers to leave by the way provided, unless it be unsafe, or a justifying necessity exists to escape from peril or injury to life or limb. *Penna. R. R. Co. vs. Zebe,* 37 *Penna. St.,* 420; *Bancroft vs. Boston & Worcester R. R. Co.,* 103 *Mass.,* 513.

It is claimed by the plaintiff that this proceeding was sanctioned by the fact that this same thing had occurred before and that the company had not stopped it. Even if this were proven, it would not be any excuse. The fact that many people disregarded an evident rule does not abrogate that rule. *Penna. R. R. Co. vs. Zebe,* 37 *Pa. St.,* 423; *Phillips vs. Rensselaer & Saratoga R. R. Co.,* 49 *N. Y.,* 182.

*David G. McIntosh,* and *John J. Wade,* for the appellees.

An invitation by one of the company's servants to alight at a place other than the station, is held sufficient authority for the passenger to do so. *Foy vs. London, Brighton, and South Coast Railway Co.,* 18 *C. B. N. S.,* 225; see also *McIntyre vs. N. Y. Cen. R. R. Co.,* 37 *N. Y.,* 287; *Penn. R. R. Co. vs. McCloskey,* 23 *Penn. St.,* 529.

Boarding a train while in motion is not under all circumstances negligence *per se.* The question of liability must necessarily be determined by the facts and circumstances of each case; whether the train was in rapid motion; whether the train was started while the passenger was attempting to leave or get on, and whether the real danger was obvious. *Jeffersonville R. Co. vs. Hendricks,* 26 *Ind.,* 228; *Lloyd vs. Hannibal & St. Jos. R. Co.,* 53 *Mo.,* 509; *Burrows vs. Erie R. Co.,* 4 *N. Y. Supreme Ct.,* 44; *Evansville, &c. R. Co. vs. Duncan,* 28 *Ind.,* 441.

Boarding a train, or offering to do so, at a distance from the usual station or stopping place, is not negli-

gence *per se* in a passenger. *Belair vs. Chicago, &c. Railroad Co.*, 43 *Iowa*, 663; *McDonald vs. Chicago R. Co.*, 26 *Iowa*, 124; *Foy vs. London, B. & S. C. R. Co.*, 18 *C. B. N. S.*, 225; *Leapley vs. Balto. & Ohio R. R. Co.*, 65 *Md.*, 571.

The questions at issue in this case of the exercise of care, can only be determined in the light of all the attendant circumstances, and the facts had to be determined by the jury. *Balto. & Ohio R. R. Co. vs. State, use of Hauer, et al.*, 60 *Md.*, 449; *Cumberland Valley Railroad Co. vs. Maugans*, 61 *Md.*, 61; *Western Maryland Railroad Co. vs. Stanley*, 61 *Md.*, 266; *Balto. & Ohio R. R. Co. vs. State, use of Mahone*, 63 *Md.*, 137; *Balto. & Yorktown Turnpike Road vs. Leonhardt*, 66 *Md.*, 70; *McMahon vs. Northern Central Railway Co.*, 39 *Md.*, 449.

The principle in all cases would seem to be that the contract creates a duty, and the neglect to perform that duty, the misfeasance or the nonfeasance, is a ground of action upon a tort. The obligation does not arise simply on the individual contract, but on a general duty implied by law. *Boorman vs. Brown,* 43 *Eng. Com. Law*, 844; *Brown vs. Boorman*, 11 *Clark & Fin.*, 44; *Coggs vs. Bernard*, 2 *Ld. Raym.*, 909; *Marzetti vs. Williams*, 20 *Eng. Com. Law*, 415; *Burnett vs. Lynch*, 12 *Eng. Com. Law*, 331.

In these cases the declarations appear to have set out the contract, sometimes with much detail, and then charge the breach to have been tortious, and they are all treated as actions in tort.

It can make no difference whether it be averred that the defendant contracted to transport the plaintiff safely; or that the defendant received the plaintiff as passenger, and it was its duty to transport him safely. *Harris vs. Costar*, 11 *Eng. Com. Law*, 505; *Ross vs. Hill*, 52 *Eng. Com. Law*, 2 *Man. Gr. & S.*, 877; *Stocklin vs. Bishop*, 4 *Howard*, 167.

The same count, or counts substantially the same, may be regarded either as founded on tort or in assumpsit. Thus, when the *gravamen* alleged is a breach of duty arising out of an employment for hire, and the same circumstances which show a breach of duty amounting to a tortious negligence, show also a breach of promise implied from the consideration of hire, each count contains allegations sufficient to support either in tort or assumpsit. 4 *Robinson's Practice*, 875 ; *Church vs. Mumford*, 11 *Johns.*, 479 ; *Emigh vs. Pittsburg, Ft. W. and C. R. R. Co.*, 4 *Bissell*, 114 ; *New Jer. Steam N. Co. vs. Merchants' Bk.*, 7 *B. Mon.*, 661–2 ; *Bank of Orange vs. Brown*, 3 *Wend.*, 158 ; 1 *Chitty P.*, (16 *Am. Ed.*), 152, 398 ; *Ames vs. Union R. R. Co.*, 117 *Mass.*, 541.

IRVING, J., delivered the opinion of the Court.

This was an action brought by husband and wife for injuries to the wife, alleged to have been sustained by reason of the conduct and negligence of the employés of the appellant. The appellant contends that upon the testimony of the appellees and their witnesses, such case was not made as to justify its submission to a jury. The consideration of this ground of complaint involves an examination into, and analysis of, the facts, as well as the incidental discussion of some questions of admissibility of some of the facts given in evidence.

The conceded facts are, that the appellant on the occasion of the injuries received by the appellee, Mrs. Kane, was running, on a Sabbath day, an excursion train on the Curtis creek branch of its road ; and that the plaintiffs, the appellees, were regular passengers on that day, not as excursioners, though they had excursion tickets, but as passengers to a point where they wished to visit a sick friend. The injuries sued for, were received in an effort to board the train in the

evening, for the purpose of returning to Baltimore City. About the circumstances attending this effort to board the train there is some conflict of evidence, but the correctness of the Court's ruling in sending the case to the jury must depend on the testimony of the plaintiffs. There is no substantial disagreement as to the description of the *locus in quo*, and the premises adjoining. There was a platform, at which a train of cars was standing and filled ready for return to Baltimore, when the plaintiffs left the platform and went to the place where the effort to get on another train was made which resulted in the accident. At the platform was a shed for the shelter of passengers, and where these plaintiffs were, when they allege they were told by a railroad official to go down and take their train, which was at a point some distance away from the platform. Steps descended from the platform to a plank walk alongside the railroad track, and a few inches higher than it, which plank walk led to the bath house of this resort. Whilst the train which was filled stood at the platform making ready for departure, another train from Baltimore came down and passed by the standing train and the platform, and ran down towards the pier. The engine had to reverse by use of a "Y" to return to Baltimore. Before this train came, the plaintiffs, who had been unable to get seats on the train standing at the platform, were spoken to by a person wearing the uniform of the company, (which uniform Mrs. Kane said she knew) who said to them that another train "will be along in ten minutes, we have telegraphed for an extra train," and invited them into the waiting shed. When this promised train came by, the same individual, with the uniform of the company, who had invited them into the waiting shed, came and said to them, "there is your train, go and get on it." The crowd was all moving in the direction of this train,

and being so instructed by this person, they went, with many others down the steps to the plank walk, and down it to the point where the attempt to board the train was made. When the train stopped, plaintiff's husband and child got on. The train again moved toward the pier and stopped; (as plaintiff and her witnesses say), when she, assisted by a man named Stout, tried to mount the steps. Stout says he had his hand under her elbow. She put her foot on the step and the car gave a jerk, and she was thrown off, and falling under the car she was seriously injured—one arm and the fingers of the other hand being cut off. The step of the cars she says was about eighteen inches from the plank walk. Mr. Stout says he thinks about two feet. Passengers were crowding in, all along this plank walk; and the plaintiffs and their witnesses say they heard no direction not to board the train there or to desist; and said no effort was made to prevent its being done. Mr. Stout had immediately before assisted two ladies successfully in boarding the train there. After doing so the train moved about the length of a car, and again came to a full stop, when he proceeded to assist Mrs. Kane. Although there was evidence from the defendant that the train never came to a stop, and was in actual motion when the effort to board the train was made, for the purpose of the ruling whether there was any evidence to take the case to the jury, we cannot consider that contradiction of the plaintiffs and their witnesses. There was evidence tending to show, that on all such occasions passengers were in the habit of boarding the train, and were allowed to do so, without objection from any body, all along this plank walk wherever the train might happen to stop.

The appellants insist that, having provided a platform where the train regularly stopped, the plaintiffs had no right to get on at any other point, and that the

attempt to do so was, *in law*, contributory negligence. Reliance for this contention is placed upon *Thompson on Carriers of Passengers, page* 129, where it is stated, and authorities for it are cited, that when a safe and convenient means of getting off and on the cars has been provided, if a passenger uses a way of his own choice he will be responsible for consequences. But clearly this means, that when the railroad recognizes *that as the only* place where passengers will be received or discharged, and has so ordered; for the same authority in the same connection says, that "wherever a railroad company *is in the habit* of receiving passengers "whether at the station or some point outside, passengers have a right to assume that such parts of the premises are in safe condition for such purpose."

Of course the platform provided by the company is the most suitable place 'for ingress and egress, but it does not follow, that if the company's officers see a person getting on or off a train elsewhere than at the platform, his effort may be wilfully or negligently disregarded to his injury. Here the passengers were allowed to enter from this board walk. There is evidence at any rate that way. The doors were not closed against them; and so far as the plaintiffs' evidence goes there was no inhibition or effort to prevent it. Witnesses say that passengers entered the cars from this plank walk on all excursion occasions. In *McDonald vs. Chicago and Northwestern Railroad Company*, 26 *Iowa*, 139, Judge DILLON, speaking for the Court, says: "If the train had arrived, and was on the track, the car doors open, and if, as is frequently if not generally the case, passengers are allowed, or at least not forbidden, to enter the cars before they are drawn up in front of the station, we think a passenger may reasonably and properly make the attempt to reach and enter the cars, if he is not aware of any rule or regula-

Baltimore & Ohio Railroad Co. *vs.* Kane.

tion to the contrary; and if he receives an injury in so doing (he using proper care) from the unsafe and dangerous condition of the platform or the steps in a place where passengers would naturally go, the company is liable therefor." On page 142, the same distinguished Judge says: "A railroad company has a right to require all passengers, about to enter their cars, to do so only when the cars are brought up to the platform for that purpose. We cannot say, that it is a *rule of law* that the mere existence of a platform in front of a depot is necessarily notice to the passenger that the train must be drawn up to that place to receive him, and that the company requires that he shall wait and enter the cars at that place, and is prohibited from entering them elsewhere. Often, however, there is no such requirement, and passengers are allowed, or at least not forbidden, to enter elsewhere."

If the railroad company intended to prohibit an entrance elsewhere than at the platform in front of the station, notice to that effect should have been given; and these plaintiffs ought to have been shown to have known of such inhibition, or that they ought to have known it, if there were such prohibition, from the publicity of such notification; or from the condition of the place where they attempted to enter, and all the circumstances surrounding them. There is no pretence of any notice to them that passengers would be received at the platform in front of the station only, and were prohibited from attempting to enter at any other place. It was a good plank walk, elevated some inches above the track where they say the cars had stopped, and hundreds of people were being received into them there; or, at least, not prevented or prohibited from entering, according to the plaintiffs' evidence. So that apart from the alleged direction of an official to go and enter the car, there would seem to be strong authority for

permitting this case to go to the jury. But certainly, if these plaintiffs were, as they testify they were, directed by a person wearing the uniform of the railroad company, and whom they justifiably supposed to be such officer, to take the train away from the platform, they were, in such case, justified in supposing they were not obliged to get in at the platform in front of the station; and that it was not against the company's rules to board the train where this attempt was made, and where so many others did enter the cars; and the railroad must be answerable for accidents resulting from the negligence of its officers in such case. The contention is, however, that the person so directing them is not proven to have been an officer of the company, and they were not justified in supposing him to be such officer; but we think that as he wore the company's uniform, and said "*we* have telegraphed for an extra train," and invited them into the waiting apartment, and then, as an officer, directed them, when the train came, that this was their train, and "to go and take it," there was sufficient *prima facie* evidence to them that he was what he seemed to be. At such a moment, it hardly could have been expected or required of them to verify his authority by the testimony of anybody before they acted. It was certainly evidence to go to the jury; and it was entirely competent for the road to show the plaintiffs were mistaken, and that no such official was there; or to have shown that those who were there did not actually do or say what the plaintiffs say a seeming official did. It was a question for the jury whether there was such person in the uniform of the company who did give the directions testified to. If there was no such official and no such directions from one, the jury could not find for the plaintiffs upon their first prayer. The witnesses may have been mistaken; but Mrs. Kane said she knew the uniform of

the company and this person wore it. The jury was the proper tribunal to decide whether this was so. We think there was no error in granting the plaintiffs' prayer, nor in rejecting the defendant's first and second prayers. In *McMahon vs. Northern Central Railway Co.*, 39 *Md.*, 449, this Court said, "in no case ought the Court to take the question of negligence from the jury, unless the conduct of the plaintiff, relied on as amounting in law to contributory negligence, is established by clear and uncontradicted testimony; and in the case of *Cumberland Valley Railroad Co. vs. Maugans*, 61 *Md.*, 61, the Court said and, if possible, more emphatically: "the case must be a very clear one to justify the Court in taking upon itself the responsibility; it must present some decisive act in regard to the effect and character of which no room is left for ordinary minds to differ." The plaintiffs' prayer put the case to the jury, on the hypothesis that the effort to board the train was not made until the train came to a full stop, and embodied the circumstances as to *time, place, &c., when* and *where* the attempt to enter was made as they had testified to them, and was, we think, properly granted. The third, fourth, and fifth and a half prayers of the defendant put the question of the contributory negligence of the plaintiff very fully to the jury, and were granted. The third and fourth instructed the jury, that if the accident was in *any degree* referable to the negligence or want of care of the plaintiff, they could not find for the plaintiff. Those instructions could hardly have been made more comprehensive except by the phraseology of prayer five and a half, which says that though the jury might find negligence on the part of the railroad company yet if they found, "there was a want of prudence and proper care on the part of Mrs. Kane in attempting to get on the cars at the place, or at the time when she did, and that such want of care and

Baltimore & Ohio Railroad Co. *vs.* Kane.

prudence on her part, directly contributed to the accident, then the verdict of the jury *must* be for the defendant." This was certainly as far reaching as the defendant could possibly ask. "At the place" had direct reference to the plank walk where the attempt was made; and "at the time" could only refer to the moment of the attempt as to whether the train was in motion, when the attempt was made.

By these prayers everything seems to have been submitted to the jury which could possibly affect the defendant's responsibility for the accident. Yet great stress is laid on the refusal of the Court to grant the fifth prayer of the defendant. We can see no error in its rejection. It was clearly misleading. It assumes there was evidence that a place had been "designated" as the place for entering the cars, which implies an *order, notice,* or *sign* of which there was no evidence. The existence and use of the platform, as one place of entry, was all the proof about it. It asked the Court to say, as matter of law, that the platform, which was there, was the only place where a passenger could justifiably attempt to enter the cars, without any evidence of a rule of the company on the subject; and without reference to the knowledge or ignorance of the plaintiffs about it. It also wholly ignores the evidence tending to show a practice of receiving passengers all along this plank walk, on excursion occasions; as well as the proof in this case of a person clothed and acting as an officer of the road directing these plaintiffs to enter where they did. It asks the Court to say, as a matter of law, that this attempt to enter the car, if the car was in motion was *per se* contributory negligence, and that the verdict *must be* for the defendant, without any qualification as to the speed or degree of motion, whether fast, or very slow—barely moving. This lady was, by the evidence, six months gone in pregnancy;

but she was proven to be only twenty-eight years old, and was assisted by a man in her effort to get on board. Under such circumstances, if the train was moving very slowly, "ordinary minds might differ" as to the prudence or imprudence of the attempt. It would seem to be a question especially proper for the jury, and was committed to them by prayer five and a half. It should be noted that an officer of the road testified to taking a lady badly afflicted with rheumatism to a point directly opposite to Mrs. Kane to help her into the train, on the side of the cars where there was no plank walk and which was the lowest, and where the step was longer than from the plank walk; and while there the witness saw the accident.

If the train was in rapid motion the danger would be obvious, and an effort to get off or on, in such case, has been decided, and with good reason, to be negligence in law; but as was said in *Maugans' Case* (61 Md., 61), there is "no general accord of judicial opinion on this subject;" and "the weight of authority is against the proposition that it is *always*, as matter of law, negligence and want of ordinary care for a person to get off from a car when it is in motion." The rule ought to be the same whether the effort be to enter or to alight.

The true rule as established by *Maugans' Case*, is that *all* the circumstances must be considered in order to determine whether there is contributory negligence; and that it "is not sound to select one prominent fact" as controlling, to the exclusion of the rest. The physical condition of this lady was to be considered with reference to her age and the fact that she was assisted by a man; the height of the step, and if the car was in motion, the rapidity of the motion were also facts bearing on the question of the propriety of her effort to get on, and were specially proper for a jury to

weigh. We see nothing so distinguishingly and unquestionably hazardous as to require the Court to say, as a matter of law, that the attempt was fatally contributory as this prayer required the Court to say.

What we have said respecting the prayers discussed, disposes of the remaining prayers of the defendant, which, according to the views we have expressed, were rejected properly.

The first, second, third, fourth, fifth, sixth, seventh and eighth exceptions relate to the admissibility of certain evidence tending to show a habit of receiving passengers along the plank walk, and elsewhere than at the platform. For the reasons and upon the authorities already cited in discussing other propositions, it is clear there was no error in those rulings. The motion in arrest of judgment was abandoned at the hearing.

*Judgment affirmed.*

(Decided 12th April, 1888.)