### J. G. GAUNCE V. GULF, COLORADO & SANTA FE RAILWAY COMPANY.

Decided December 17, 1898.

1. **Railway Company—Contributory Negligence.**

Where a passenger is injured while standing on the platform of a car in motion, his conduct in assuming such position is not contributory negligence per se and as matter of law.

2. **Practice—Court and Jury—Peremptory Instruction.**

It was error for the court to peremptorily instruct for defendant in an action against a railway company to recover for personal injuries where plaintiff testified that he was passing from one coach to another to get a drink of water, there being none in the coach where he was, and while on the platform a sudden and unusual jerk of the train while running at a rate of speed prohibited by law threw him from his balance, and that an iron railing which he grasped gave way, although he is contradicted by several witnesses. Construing the constitutional guaranty of the right of trial by jury, and article 1317, Revised Statutes, requiring the judge to "submit all controverted questions of fact solely to the decision of the jury."

ERROR from Dallas. Tried below before Hon. W. J. J. SMITH.

*W. T. Henry* and *H. S. Crawford,* for plaintiff in error.

*Alexander, Clark & Hall,* for defendant in error.

HUNTER, ASSOCIATE JUSTICE.—Counsel for the defendant in error accept the statement of the nature and result of this suit as made in plaintiff in error's brief, and, except that the petition alleged that the train was running at a speed prohibited by city ordinance, we find it correct and here copy it, as follows:

"This suit was instituted on the 8th day of November, 1897, by plaintiff in error in the District Court of Dallas County, on account of alleged injuries of a personal nature suffered through negligence of defendant and its agents. His first amended petition stated that, while traveling as a paid passenger on defendant's train from Cedar Hill to Dallas, there being no water in the coach in which he was traveling, he, prompted by thirst, attempted to pass from that coach into the next one for the purpose of securing a drink of water; that while attempting to pass from one coach to the other, and while upon the platform between the two coaches, the train upon which the plaintiff was traveling, through the negligence of its operators, gave a violent and unusual lunge and jerk, so that he was unable to maintain his foothold and was thrown off his balance; that in order to stay himself, and to prevent his falling, it was necessary for him to grasp the iron railing surrounding the platform, which he did; that if the railing had been constructed and maintained with proper care, he would have been able to regain his foothold, but that the wood to which the railing was attached had been negligently permitted to become rotten, or the railing had become unfastened, or from some other cause arising from the negligence of defendant, the railing was insecure and gave way when plaintiff's weight was thrown against it, by means of which plaintiff was precipitated with great force from the rapidly moving train to the ground; that as a result of said fall plaintiff suffered severe injuries, detailed in the petition, permanent disease of the joints of his leg, and disability for his occupation as a farmer; that prior to his injury he had been an unusually robust and vigorous man; that as a result of his injuries he was incapacitated for any sustained exertion or hard labor. Wherefore plaintiff in error sought damages for the injuries occasioned by defendant's negligence.

"Defendant in error answered by general and special exceptions, general denial, and special answer of contributory negligence on the part of plaintiff in error, in that the accommodations of the coach in which he traveled from Cedar Hill to Dallas were good and sufficient, and that plaintiff was riding upon the platform without any necessity therefor, and had been admonished by defendant's agent in charge shortly before the accident not to stand upon the platform; and that his negligence in riding on the platform was the proximate cause of his injury.

"Upon the trial of the cause the court peremptorily instructed the jury to return a verdict for defendant, and thereupon a judgment was rendered for defendant, from which judgment, after the overruling of his motion for a new trial, plaintiff in error prosecutes his writ of error to this court."

The evidence of the plaintiff was that on the 2d day of October, 1897, he was a passenger on the defendant's regular passenger train running from Cleburne to Dallas; that, as the train was on the Y within the corporate limits of Dallas, backing into the station, while running at the rate of fifteen miles an hour, he was passing from the rear coach to the one next to it to get a drink of water, there being none in the coach he was in, and as he stepped upon the platform he took hold of the iron railing next to the coach with his left hand, when the coach gave a sudden and violent jerk to one side, throwing him off his balance. He threw out his right hand and caught the other railing, and something seemed to give way, and he was thrown off to the ground and injured. On cross-examination he said: "I know what I caught hold of gave way. I don't know whether it was defective or not." He was accustomed to riding on trains, but the accident was caused by an unusual lurch of the train. He had never seen anything like it before. The city ordinances of Dallas prohibited railway trains from running at a greater rate of speed within the corporate limits than six miles an hour.

Two of the defendant's car inspectors testified that they examined the car within a few hours after the injury occurred, and that none of the railings were pulled loose, nor were they in any manner defective. They were all in good order, and so was the car in every respect.

Dr. Harris testified for defendant that he attended the plaintiff professionally on the night of October 2, 1897, at his home, and that he told him that "he started from the car in which he was riding to the next car in front to get a drink of water, and while on the platform he decided he would go down on the steps and see how far it was to the depot, and that something that he caught hold of gave way, and he fell to the ground." In a subsequent conversation he told witness that he had "started into the other car, and just as he got out on the platform the train gave a lurch, and he caught at something which gave way and he fell, and that he was going after water."

Dr. Armstrong, of Dallas, one of the company's regular doctors, was sent to see him by the company's local agent, while he lay on a porch near where he was injured. He examined his injuries, and shows he was in a bad condition, suffering from the effects of a fall, and says: "As is required by the company, I procured from him a statement of his accident. He told me he was standing on the steps of the rear coach looking around when the car gave a lurch and he was thrown to the ground."

Davis, conductor on the train, testified: "Before the train started back on the Y he came out on the rear platform of the backing train, where he and the brakeman were; that he told plaintiff he was not allowed to ride out there, and it was against the company's rules, and that plaintiff then went inside at his request." His evidence shows also that it is probable that plaintiff caught the brake wheel in his fall, which he said was always loose while the train is in motion and is easily turned. He also testified that the car was running ten miles an hour when the accident occurred, and that it was within the city limits of Dallas.

It rebuttal the plaintiff denied that he was on the rear platform, and denied that the conductor had the conversation with him above related. He also stated that he did not remember making any statement to Dr. Armstrong at all, but does remember that Dr. Armstrong came to him on the porch and put morphine or something in his arm. He was then suffering intensely. Nor does he remember making any statement to Dr. Harris on the night of October 2d. He says he could not have made such statements truthfully; that some things he recollects that occurred that night, and some he heard them talking about that he knows nothing about. The evidence fully shows that he was very much under the influence of morphine or other drugs given to alleviate his suffering, which all agree, it seems, was quite severe.

With this evidence, the court charged the jury to find a verdict for the defendant, and this action is complained of here. We are of opinion that this charge was erroneous.

In Choate v. Railway, 37 Southwestern Reporter, 319, Justice Brown, in delivering the opinion of the Supreme Court of Texas, said: "Negligence, whether by the plaintiff or defendant, is generally a question of fact, and becomes a question of law to be decided by the court only when the act done is in violation of some law, or when the facts are undisputed, and admit of but one inference regarding the care of the party in doing the act in question. In other words, to authorize the court to take the question from the jury, the evidence must be of such a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it. Railway v. Kane, 69 Md., 11, 13 Atl. Rep., 387; Railway v. Griffith, 16 Sup. Ct., 105; Railway v. Ives, 144 U. S., 417; Railway v. Gosscamp, 69 Texas, 547; Chatham v. Jones, 69 Texas, 746. We think this the correct rule, and that the court is not justified in taking from the jury a question of fact, except in case the evidence is such that there is no issue made for the jury to determine."

In that case the plaintiff was injured by reason of a sudden jerk of the train, not shown to have been unusual, while he was on the platform passing from one coach to another. See 36 S. W. Rep., 247; 44 S. W. Rep., 69.

And in Bonner v. Glenn, 79 Texas, 534, where the undisputed facts showed that the plaintiff was injured while on the rear platform of a caboose to which an engine was coupling in the rear, our present Chief Justice Gaines said: "But should the court have said that it was negligence to stand on the platform? Clearly not. There is no statute which required the plaintiff to remain inside the car. Whether his action in taking a position on the platform was negligent or not was a question to be determined by the jury, after considering all the circumstances."

So it seems to be settled that the fact alone of his being on the platform did not constitute contributory negligence authorizing the court to give the peremptory charge in favor of defendant.

The evidence of the plaintiff, to our minds, is amply sufficient to sustain a verdict in his favor. Plaintiff's evidence shows that while right-

fully on the platform a sudden and unusual jerk of the train, while it was running at a rate of speed prohibited by law, threw him from his balance, and that the railing gave way and allowed him to fall on the ground and be injured. This evidence alone, with damages proved, would, if the jury believed it, have entitled him to recover. The fact that he was contradicted made only another issue for the jury; that is, as to the credibility of the witnesses and the weight of their evidence.

Counsel for plaintiff in error in their able brief have well said: "Certainly, if it were really in the power of trial judges to so dispose of cases, there would be little protection and meaning in the constitutional right of trial by jury." The rule which must govern the courts of Texas, as we understand it, was clearly laid down by Chief Justice Stayton in Stooksbury v. Swan, 85 Texas, 573, and he bases it upon a statutory enactment, and that is: "The jury in all cases are the exclusive judges of the facts proved, and of the weight to be given to the testimony, except where it is provided by law that proof of any particular fact is to be taken as either conclusive or presumptive proof of the existence of another fact, or where the law directs that a certain degree of weight is to attached to a certain species of evidence."

McCray v. Railway, 89 Texas, 168 (34 Southwestern Reporter, 95), was a case where a brakeman sitting on the side of a flat car in a moving train near San Antonio was killed by a steel rail, one end of which fell off the car in front of him, and sweeping along the side of the car he was on struck him and killed him. There was no evidence of negligence in the loading on of the rails, nor in the securing of them on the car, nor in the operation of the train, nor otherwise,—simply the bare fact of the killing, and that the rail fell off and did it. The company proved that there were four guards on each side of the flat car, from which the rail fell when it arrived at San Antonio, which its witnesses swore were amply sufficient to hold the rails, but it did not appear how many were in when the rail fell. The District Court instructed a verdict for the defendant, because no negligence of defendant was proved. The Court of Civil Appeals at San Antonio affirmed the action of the lower court, but Justice Brown, in his usual clear style and exhaustive research, shows that, while the general rule is that the plaintiff must prove negligence in such cases, yet " the very nature of the accident may, of itself and through the presumption it carries, supply the requisite proof;" citing Wharton on Negligence, sec. 421, and many cases, among them an English case which lays down the rule as follows: "There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant, or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, by defendant, that the accident arose from want of care." Scott v. Railway, 3 Hurl. & Col. (Exch.), 594. He then concludes that the district court erred in instructing a verdict for defendant, and says: "It should have submitted the case to the jury, un-

der proper instructions, to determine from the evidence whether or not the defendant had been guilty of negligence, and whether that negligence caused the death of Jesse McCray."

In this case, under the evidence as stated above, both functions of the jury were demanded, to determine (1) what weight should be given to the testimony of the plaintiff, and what to the doctors and to the company's employes who contradicted him, and (2) whether, giving credibility to his statements and rejecting those which contradicted him, which the jury had the right to do, though a thousand were against one, his evidence is sufficient in the minds of the jury to prove the fact of the negligence of defendant as alleged.

Our Constitution provides: "The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency." Texas Const., art. 1, sec. 15.

In pursuance of the demand of the people of Texas, contained in the latter sentence of this section of our Bill of Rights, the Legislature has enacted that "the jury in *all cases* shall be the *exclusive judges* of the facts proved and of the weight to be given to the testimony." It seems that the Legislature considered it proper and necessary to declare that courts trying cases, where a jury has been impaneled, have no right to pass upon these questions. They are placed *exclusively* with the jury. Of course, if there is no legal evidence tending to prove the facts alleged, either directly or by reasonable inference, the evidence raises no issue of fact for the jury to try, and in such case it would be the duty of the court to instruct a verdict. But if there is any legal evidence tending to prove the facts alleged, either circumstantially or directly, though it may be disputed and contradicted at every point by other witnesses and by other facts proven in the case, yet the court must submit the clean question of fact to the jury, without even comment or insinuation as to his views or opinions thereon or of the weight of the testimony on either side.

This exclusive feature in jury trials is happily emphasized in Texas jurisprudence by another act of the Legislature, which is as follows: "The charge shall be in writing and signed by the judge, and he shall read it to the jury in the precise words in which it is written; he shall not charge or comment on the weight of evidence; he shall so frame the charge as to distinctly separate the questions of law from the questions of fact; he shall decide on and instruct the jury as to the law arising on the facts, and shall submit all controverted questions of fact solely to the decision of the jury." Rev. Stats., art. 1317. See also Bowman v. Texas Brewing Co., 17 Texas Civ. App., 446; Shifflet v. Railway, 18 Texas Civ. App., 57. "Shall submit all controverted questions of fact *solely* to the decision of the jury."

The importance of these provisions of our Constitution and laws, in our opinion, can not be overestimated, nor too sacredly guarded.

The second assignment of error need not be considered by us, as it is not probable that the question there p.esented, on the condition of the pleadings, will arise on another trial.

For the error in giving the peremptory charge complained of, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*