# South & North Alabama Railroad Company *v.* Thompson & Garner.

### *Action for Stock Killed.*

1. *Public crossing; statutory requirements as to duty of persons in charge of train.*—The statute (§ 1699, Code of 1876,) exacts certain positive duties of those in charge of a train approaching a public crossing, or other place mentioned in the statute, rendering the railroad company liable for all damage to persons or property occasioned by the failure to observe these requirements,

[South & North Alabama Railroad Co. v. Thompson & Garner.]

and imposing on it the burden of showing compliance with the statute, if the injury occurs at one of the places therein mentioned.

2. *Same ; what will not absolve from liability.*—The observance of the statutory requirements will not excuse from liability, if, in other respects, the company or its employees neglected those precautions which ordinary prudence suggests as necessary to avoid casualties.

3. *Evidence ; what admissible under general averment of negligence.*—Under a general averment that ''the injury complained of. was the result of negligence or want of skill of defendant's employees in the management or running of the train,'' &c., evidence is admissible that defendant did not have on the train a sufficient number of brakemen and servants to control it.

4. *Duty of person approaching railroad crossing.*—A traveler approaching the intersection of a railroad with a public highway, is bound to look out and listen for engines and trains; and a neglect of this duty, essentially contributory to the injury, will defeat all right of recovery for it; but he is not bound to make inquiry as to the schedules or the time when trains are expected to pass.

5. *Rate of speed; what charge as to, erroneous.*— A railroad train approaching a public crossing, must not only give the warnings and observe the other precautions required by statute, but its speed must be so slackened that the train may be more manageable in passing the crossing; and hence, a charge that the company ''had a right to run its train at any speed it pleased, so that it did not endanger freight or persons on board,'' asked in a suit to recover damages for injury to persons or property at a public crossing, is properly refused.

APPEAL from Jefferson Circuit Court.

Tried before Hon. WILLIAM S. MUDD.

The appellees, Thompson & Garner, brought this action against the appellant, the South & North Alabama Railroad Company, to recover damages for the killing of sixteen head of stock. The complainant avers that the killing was the result of the negligence or want of skill of defendant's employes in the management or running of the train. From the evidence for the plaintiffs it appeared that on the 23d of November, 1875, the plaintiff Thompson and a young man were driving a drove of horses and mules, about thirty in number, along the dirt road leading from Elyton to Montevallo, and while thus driving them they crossed the track of defendant, at a public road crossing, about a mile from Brock's Gap ; and while plaintiff *Thompson* and the young man—the young man in front and Thompson in the rear of the drove, the two being the only persons in charge of said drove—the freight train of defendant came along at a speed of thirty or forty miles an hour over the crossing, and a little below said crossing ran over and killed two of said mules and horses, and a little further down ran over and killed other mules, and continued to run over and kill said mules and horses until the train had killed sixteen of them. It was shown that the stock killed were worth in all from $2,160.00 to $2,400.00 ; that at the point where the dirt road crossed said railroad it was not in a cut, nor on a curve, but that the grade of the railroad was a heavy down grade, for

more than a quarter of a mile, in the direction from which the train came. Thompson testified that he had crossed the railroad several times on the day of the accident, and that he had instructed the young man to listen for trains, and that when they arrived at the place where the accident occurred, the young man did stop and appeared to be listening; that he, witness, also listened, but heard no train until it turned the curve, about three hundred yards from the crossing, and that he did not hear the bell ring or the whistle blow until the train turned the curve; that the bell did not ring, or the whistle blow until the train was within one hundred or one hundred and fifty yards of the stock, when the whistle was blown; that he could not discover that the speed of the train was at all reduced. The plaintiff's testimony also tended to show that the engine was not reversed or the brakes applied. It was shown that the accident occurred on a clear, still day. Further testimony for the plaintiff tended to show that the employes in charge of the train were intoxicated and had been running it at a dangerous rate of speed and in a reckless manner all the way from Decatur to where the accident occurred. There was also evidence for the plaintiff tending to show that the train which caused the accident, and which was a large one, consisting of nineteen loaded cars, did not have sufficient hands or brakesmen on board to control it, there being only three brakesmen on said train, and the fireman who had charge of a brake on the engine. For the defendant it was in evidence that for at least one-fourth of a mile before reaching said crossing, near where the plaintiffs' stock was killed, the engineer blew his whistle and rang his bell, and continued to blow such whistle and ring such bell until the train had passed the crossing; that it was not possible to see the stock on the track till his engine turned the curve, about three hundred yards from the place where the accident occurred; that as soon as the stock were perceived, the cattle alarm was sounded, the brakes applied, and the engine reversed, and all means known to skillful men were used to stop said train. It was further in evidence that the engineer, fireman, conductor and brakesmen were all perfectly sober and competent in every respect for their respective places; that on a clear, still day, such as that on which the accident occurred, and in the locality, the noise of a train could be heard from half a mile to a mile and a half; that with a train such as the one which caused the accident, and down such a grade as there was at the place, it was impossible to stop the train in less than eight or nine hundred yards; and that at the time the accident occurred the train of defendant was in

charge of a new set of employes, who had taken charge of it at Birmingham, and was being prudently and carefully run at a speed not exceeding eighteen miles an hour; that the plaintiffs passed through Birmingham with their stock on the day it was killed, and by applying at the office of the company there, could have learned the schedule of the trains, and thereby avoided the accident, but that such train was ten or fifteen minutes behind its schedule time when the accident occurred. It was also shown that there were on said train all the necessary appliances for checking or stopping it, which are ever used on a freight train.

This was in substance all the evidence, and the court in its general charge instructed the jury, "that if they believed, from the evidence, that plaintiffs had stock killed on the railroad track of defendant by its cars, locomotives, and engines, being operated at the time by the defendant, through its employes, on or about the 23d day of November, 1875, that said stock was of value, then they must find for the plaintiffs and assess their damages at the value of the stock at the time they were killed, with interest thereon from the date of said killing, at eight per cent., till the time of the trial, unless they should further find from the evidence that said stock were not killed through any want of care and skill on the part of defendant's employes; that if defendants employees were not guilty of any negligence, but rang the bell or blew the whistle at least one-fourth mile before reaching said public road crossing, near which the stock were killed, and continued to ring said bell or to blow said whistle at intervals till said train had passed said crossing, and that upon perceiving plaintiffs' stock on the track the engineer gave the cattle alarm, blew on brakes, reversed his engine, and did all in his power known to skillful engineers to slow or stop said train, and that the fireman and brakesmen put on brakes as fast and as well as they could, and did all in their power to stop said train, then the plaintiff would not be entitled to recover, and they must return a verdict for the defendant; but the burden was on the defendant to show that it was not guilty of any negligence."

The plaintiffs then requested the following written charges : "When the damage in a case like this is done at a crossing of the dirt road and railroad, the railroad company cannot excuse itself by simply showing that it complied with the requirements of the statute, unless it also appears from the testimony that the company used care and prudence in other respects." The court gave said charge and the defendant excepted.

The defendant then requested the following written

charges: 1. Under the pleading in this case the jury will not be authorized to consider and decide upon the sufficiency of the force on the freight train that did the killing; if the hands and employees on said train were not guilty of any negligence, but did all in their power, and used all the means and appliances known to men skilled in their respective employments, to slow or stop the train, this is sufficient and the plaintiff cannot recover. 2. If the jury believe from the evidence that the employes of defendant rang the bell or blew the whistle at least one-fourth of a mile before reaching the public road crossing, (the first one to be reached by the train), near which the plaintiffs' stock were killed, and continued to ring said bell or blow said whistle at intervals until the train passed said crossings, and that on perceiving plaintiffs' stock on the track of the railroad, said employees did all in their power to slow or stop said train, known to men skilled in the employment of engineers and brakesmen, and that plaintiffs contributed partly to the killing of said stock by failing to listen for the approach of said train, or that being able to ascertain when the train would pass said crossing, failed and neglected to do so, and that by such a precaution the killing of the stock would have been avoided, then the defendant is not liable in this action, and the plaintiffs cannot recover. 3. If the jury believe from the evidence that the defendant, through its employees, the engineer having control of the locomotive of the freight train that killed the stock, rung the bell and blew the whistle at least one-fourth of a mile before reaching the public road crossing, (the first one to be reached by the train near which the stock were killed), and continued to ring said bell or blow said whistle at intervals, until the train passed said public road crossing, and that on perceiving the plaintiffs' stock on the track of the railroad, said engineer used all the means within his power known to skillful engineers, such as the application of his brakes, and the reversal of his engine, in order to slow or stop the train, and that the brakesmen did all in their power to slow or stop said train, then the plaintiffs are not entitled to recover, although the jury should further find from the evidence that said train, when it approached said crossing, but before the stock could be seen by said engineer, was being run at a much higher speed than fifteen miles an hour; for the defendant had the right to run its trains at any rate of speed it pleased, so that it did not endanger the freight or persons on board of said train."

. The court refused each of said charges, and the defendant separately excepted. There was a verdict and judgment in favor of the plaintiff for the sum of twenty-four hundred and

ninety-eight dollars. From this judgment the defendant appeals to this court, assigning as error the charges given and the refusal to charge as requested.

HEWITT & WALKER, and TERRY & LANE, for appellant.

PORTER & MARTIN, contra.

BRICKELL, C. J.—1. The statutes make certain positive regulations a railroad company, its engineer or other person having the control of the running of its locomotives, must observe before reaching any public road crossing, or any depot or stopping place on such road, and until such road crossing is passed, and until he reaches such depot or stopping place. There are other places specified in the statutes at which certain regulations must be observed.—Code of 1876, § 169·.. The engineer or other person having control of the running of a locomotive, who does not observe these regulations, is subject to indictment and punishment for a misdemeanor.—Code of 1876, § 4256. The railroad company is declared liable for all damages done to persons, stock, or other property, caused by a failure to observe these regulations, or by any negligence on the part of the company or its agents. In any suit for injuries to property "the burden of proof is on the railroad company," to show that these regulations were observed, if the injury occurred at any one of the places mentioned in the statute.—Code of 1876, § 1700; M. & O. R. R. Co. v. Williams, 53 Ala. 595.

2. The injuries to property, which are the subject of the present suit, occurred at the intersection of the road of the appellant with a public road in Jefferson county. The Circuit Court instructed the jury, that an observance by the appellant or its servants or agents of the statutory regulations, did not excuse from liability, if in other respects there was negligence. This was the substance, though not the language of the instruction, and we do not think it objectionable. Such is the fair construction of the words of the statute, which renders the company liable if these statutory regulations are not observed, but declares in addition, a liability *for any negligence on the part of such company or its agents.* If these words were not found in the statute, it would not be a fair construction that would absolve the company from responsibility, because it observed the statutory regulations, and yet neglected other precautions which ordinary prudence would suggest as necessary to avoid casualties.

3. The first instruction requested, proceeds on the ground, that evidence that there was not on the train of cars causing

the injury, a sufficient force to manage and control it, was inadmissible under the averments of the complaint. The complaint contains two counts, neither of which aver any special acts or omissions as constituting negligence. Each count contains the general averment that the injury complained of, "was the result of the negligence or want of skill of defendant's employes in the management or running of said train, locomotive, or cars." Under our statutes, "all pleadings must be as brief as is consistent with perspicuity, and the presentation of the facts or matter to be put in issue in an intelligible form." "Any pleading which conforms substantially to the forms attached" to the Code, "is sufficient." The forms consist of general allegations of legal conclusions, rather than a statement of the particular facts which will support them. Generally, negligence is a mixed question of law and fact, and it would not comport with our system of pleading, to require that a party complaining of it, should aver each particular fact or circumstance which contributes to prove it. No such particularity is found in any of the forms of complaint attached, in kindred actions, and it would be a departure from the statute to require it in one particular class of actions.

4. It is the duty of travelers approaching the intersection of a railroad with a public highway to look out and listen for trains or engines; and a neglect of the duty contributing to an injury, will avoid all right of recovery for it.—*N. P. R. R. Co. v. Hirleman*, 49 Penn. 60. The second charge requested asserts a much broader and larger legal proposition. It asserts that if, by inquiry, travelers could ascertain when trains would pass such crossings, and if such inquiries had been made, an injury would have been avoided, the failure to make them is contributory negligence. No authority has been cited in support of this proposition. It is not the duty of travelers, or of any person in the proper use of a public highway, to make any such inquiry. They have a right to rely on a compliance with the statutory regulations, and on the appearances of the railroad track, at the time they are approaching or crossing. If they are then diligent, watching and listening for trains, the duty they owe to the railroad company is performed.

5. The third charge requested, was properly refused, because it asserted that the appellant had the right to run its train "at any speed it pleased, so that it did not endanger the freight or persons on board of said train." When a train is approaching the intersection of a public highway, there are other duties which must be observed, than such as relate merely to the safety of the freight and persons on

[Lee et al. v. Tannenbaum.]

board the train. The public at large have rights to the use of the highway equal in degree to any to which the railroad company is entitled. It is a duty to the public having the right to the use of the highway, that not only the warnings of the approach of the train, the statutes prescribe, should be given, but that the speed of the train should be slackened, so that it would be more manageable, and collisions with persons or property crossing the track may be more easily avoided.—Whart. Neg. § 804; *M. & C. R. R. Co. v. Lyon*, MSS.

We find no error in the record, and the judgment must be affirmed.