[Georgia Pacific R. R. Co. v. Blanton.]

# Georgia Pacific R. R. Co. *v.* Blanton.

*Action for Damages against Railroad Company by a Father for the Killing of his Infant Child.*

1. *Diligence required of railroad company, towards trespassers on track.* In the absence of statutory regulations, a railroad company is under no obligation to maintain a special lookout for intruders or trespassers on its track, but is only bound to the exercise of reasonable diligence after they are or ought to be discovered, and is only liable for injuries caused by wanton, reckless, or intentional negligence.

2. *Same; under statutory provisions.*—By express statutory provisions (Code of 1876, § 1700; Sess. Acts 1886-7, p. 146), when an injury to person or property is caused by the locomotive or cars of any railroad, within the limits of any city, town or village, whether incorporated or not, the *onus* is on the railroad company to repel the presumption of negligence, by showing that all the statutory precautionary signals were given, or that a compliance with the statutory regulations would not have availed to prevent the injury, or otherwise to relieve itself of the imputation of negligence.

3. *Contributory negligence, in case of infant.*—Contributory negligence can not be imputed to an infant under two years of age, since it is, as matter of law, incapable of judgment and discretion.

4. *When evidence authorizes general charge.*—When the evidence authorizes a general charge in favor of plaintiff, on appeal by defendant, it is unnecessary for the court to inquire into the correctness of the several charges given at request of plaintiff.

APPEAL from Cleburne Circuit Court.
Tried before the Hon. L. F. Box.

JAMES WEATHERLY AND AIKEN & BURTON, for appellant. [No brief came to hands of Reporter.]

KELLY & SMITH and SMITH & LOWE, *contra.*—It is negligence *per se* on the part of defendant to run its train of cars insufficiently supplied as it was with brakes, through the incorporated town of Heflin at such rapid rate of speed that an obstruction on the track at a crossing could not have been seen by the engineer in time to have stopped before reaching it.—*S. & M. R. R. Co. v. Shearer*, 58 Ala. 672; *S. & N. R. R. Co. v. Sullivan*, 59 *Ib.* 272; *M. & C. R. R. Co. v. Lyon*, 62 *Ib.* 71; *Ala. Gt. S. R. R. Co. v. Jones*, 71 *Ib.* 487. The death of plaintiff's child having been caused thereby, the affirmative charge, if it had been given at his request, would be sustained. Hence if any of the charges given are er-

roneous, the error is no injury to the defendant and judgment will not be reversed.—28 Ala. 164; 82 Ala. 169; 75 *Ib.* 473; 79 *Ib.* 429; 80 *Ib.* 195. Generally on the law of the case the following cases are cited: *Tanner v. L. & N. R. R. Co.*, 60 Ala. 621; *Grey's Ex'rs v. Mobile Trade Co.*, 55 Ala. 387; *Frazer v. S. & N. R. R. Co.* 81 Ala. 185; *A. G. S. R. R. Co. v. Jones*, 71 Ala. 487; *Hanlon v. Gov't St. R. R. Co.*, 53 Ala. 70; *A. G. S. R. R. Co. v. McAlpine*, 80 Ala. 77; *M. & G. R. R. Co. v. Caldwell*, 3 So. Rep. 445.

CLOPTON, J.—In April, 1887, appellee's infant son was killed by the locomotive and cars of appellant. The father brings the action to recover for the injury. When first seen, the child was standing on the outside of the railroad track, but near enough to be struck by the pilot in passing. The special defenses are, that the defendant fulfilled its duty to the child in the matter of lookout and preventive effort, and contributory negligence on the part of the parent.

The first question raised relates to the character and measure of duty of the defendant at the time and place, and under the circumstances of the accident. In *Memphis & Charleston Railroad Co. v. Womack*, 84 Ala. 149, we announced, as the rule of liability, that, at localities where a railroad company has the right to the exclusive use of its roadway, it does not owe to a trespasser on its track the special duty to look out for, and discover him, the necessity therefor being produced by his own wrongful act which the company was not bound to anticipate; but, when those in charge of the train discover him, while observing the general duty of lookout for obstructions, it is incumbent on them to use reasonable care to prevent injury. The corollary is, that a trespasser can not maintain a claim against the company for injuries suffered while trespassing on its road bed, unless caused by wanton, reckless or intentional negligence, as defined in *Frazer v. S. & N. Ala. R. R. Co.*, 81 Ala. 185. It was not intended to apply the rule thus stated to localities, where public roads, streets, or highways, cross the railroad track—places at which both the company and the public have a right of way for their respective and appropriate purposes. Railroad corporations are authorized by statute to use, cross, or change public roads, when necessary in the construction or maintenance of their roadways, but are required to place the roads in a condition satisfactory to the authorities of the county having the control thereof—a con-

dition safe and convenient for use by the public.—Code, 1886, § 1581. Municipal authorities have power to regulate the running of trains or engines within the corporate boundaries, and to prohibit the standing thereof on, or across, the streets or highways—to protect the public use by preventing unnecessary and dangerous obstructions. Sec. 1519. The use of public roads, streets and highways, obtained by railroad corporations, is subject to their proper and lawful use by the public, the latter, however, being the servient use, yielding precedence to use by the company. The duties are mutual and reciprocal, and the same degree of care is exacted of both. It is incumbent on those in charge of a train to regulate its movements, and to exercise reasonable care and precaution, so as to prevent injuring any person, who may be rightfully using a highway at a place where it crosses the railroad track; such persons can not be regarded as trespassers or intruders. Those having the control of a moving train, are cognizant of the accustomed and authorized use of such localities by any of the public, are apprised that its movement under such circumstances is attendant with danger, and are bound to anticipate it, which devolves the correlative duty to use reasonable preventive care. Section 1699 of Code of 1876, which governs this case, prescribes positive regulations, imposing specific duties in addition to those enjoined by the common law, which the engineer, or other person having control of the running of the locomotive on any railroad, is required to observe at specified times and places, and the failure to observe which subjects him to indictment and punishment. He is required to blow the whistle or ring the bell at least one-fourth of a mile before reaching any·public road crossing, or any regular depot or stopping place, and to continue to do so, at intervals, until such crossing is passed, or such depot or stopping place is reached; and also to blow the whistle or ring the bell on entering the corporate limits of any town or city, and to continue to do so until he has reached his destination, or passed through such town or city. It may be here remarked, that section 1144 of Code of 1886 extends the requirement so as to make it his duty to blow the whistle or ring the bell at short intervals on entering into, or moving within or passing through any village, town or city, whether incorporated or unincorporated. Section 1700 of Code of 1876, declares a railroad liable for damage done to persons, stock or other property, resulting from a failure to comply with the re-

quirements of the preceding section, or from any negligence on the part of such company or its agents. The statutes have been construed to render the company liable not only for a failure to observe the statutory regulations, but, in addition, for any negligence on the part of such company or its agents; and it is said: "If these words were not found in the statute, it would not be a fair construction that would absolve the company from responsibility, because it observed the statutory regulations, and yet neglected other precautions which ordinary prudence would suggest as necessary to avoid casualties."—*S. & N. Ala. R. R. Co. v. Thompson*, 62 Ala. 494. This construction of the statute makes it the duty of those in charge of the train to keep a proper lookout, and give the requisite signals of warning at the specified times and places; and accordingly we have held, that the failure to keep such lookout, and to give the cautionary signals at such times and places is negligence *per se*, which entitles the party injured, if using due care to escape injury, to a claim for damages.—*S. & N. Ala. R. R. Co. v. Sullivan*, 59 Ala. 272; *Sav. & Mem. R. R. Co. v. Shearer*, 58 Ala. 672; *S. & N. Ala. R. R. Co. v. Donovan*, 84 Ala. 141.

Section 1700 of Code of 1876, further provides: "When any stock is killed or injured, or other property damaged or destroyed by the locomotive or cars of any railroad, the burden of proof in any suit brought therefor, is on the railroad company to show that the requirements of the preceding section were complied with at the time and place when and where the injury was done." The construction which this provision of the statute has received is, that when stock or other property is injured or damaged by the locomotive or cars, which could be reasonably traced to a non-observance of the statutory regulations, the burden of proof is shifted on the railroad company to repel the imputation of negligence by showing compliance.—*Ala. Gr. So. R. R. Co. v. McAlpine*, 75 Ala. 113. In *S. & N. R. R. Co. v. Bees*, 82 Ala. 340, the plaintiff having proved that his mare was killed by the train of defendant, it is said: "The burden was then cast on the railroad company of showing that it has employed that measure of diligence which the law exacts of railroad companies, and that the injury was not caused by failure to do so; or, it must show that the injury could not have been averted by the employment of such diligence. Injury being proved, and no explanatory or exculpatory testimony being offered, the case is left with the burden unlifted,

and the fault is imputed to the railroad company." This provision of the statute, by its terms, was restricted to the case of stock killed or injured, or other property damaged or destroyed. By the Act of February 28, 1887, (Sess. Acts 1886–87, p. 146), this section of the Code was amended so as to include in the provision, as to the burden of proof, the case when any *person* is killed or injured. The evident intention of the amendatory act is to remedy the evil manifested by the judicial construction, which limited the provision to suits brought for injury to stock or other property. The amendatory act having been enacted after the original section had received a known judicial construction, and containing no words indicating a contrary intention, the presumption is that the legislature intended, that it should, as amended, receive the same construction in cases where persons are killed or injured, as when stock is killed or injured, Of course, the rule, when applied to persons, is qualified by the presumption that intelligent beings will take steps in time to escape injury.

The plaintiff's child was killed within the corporate limits of the town of Heflin, and after the enactment of the act amending section 1700. The plaintiff having shown that his child was killed at such time and place, the burden is cast on the defendant to show that the care, precaution and diligence, which the law exacts, was exercised; or that the injury was not caused by a failure in these respects; or that it could not have been prevented by the use of such diligence. There was a disregard and non-observance of the statutory regulations. The engineer did not blow the whistle or ring the bell on entering the corporate limits, or while passing through the town. The train was going east; the road was straight for about sixty yards from the place where the child was killed westward, and then curved gradually to the left. The engineer had the window on his right closed because it was cool and he had rheumatism, and kept a lookout through the front window. After the train passed the public crossing a short distance west of Heflin, the fireman was engaged in putting coal in the furnace, and sweeping the floor of the engine, until the whistle blew for brakes. The train consisted of the locomotive, tender, three box cars, two flats and the caboose. It was running at the speed of twelve or fifteen miles an hour on an up-grade. There were two brakemen on the box cars, one of whom was sitting on the end of the car thirty feet distant from the brake, which

he failed to reach before the child was run over, he having been thrown down by the jostling of the car. There is no evidence whether or not the cars were loaded, nor within what distance the train could have been stopped by the use of all the brakes, and other appliances at hand. Such is the character of the explanatory or exculpatory proof offered on the part of the defendant. It fails to negative all negligence, or to show a compliance with all the requirements of the statute, or that the conditions were such that the train could not have been stopped in time to prevent injury, if a proper lookout had been kept, and all the means at hand had been promptly used to stop the train. We are forced to hold that it is insufficient to establish a *prima facie* case of due and reasonable care, skill and diligence, or to repel the imputation of negligence, or to rebut the presumption of negligence raised by the injury.—*Ala. Gr. So. R. R. Co. v. McAlpine*, 80 Ala. 73.

The record eliminates from the case the question of contributory negligence. The child was about twenty-one months old and incapable of discretion and judgment, and there is no proof whatever tending to show negligence on the part of either of the parents.

Conceding all adverse inferences which could be drawn from the evidence, the court would not have erred, if on the undisputed facts the affirmative charge in favor of the plaintiff had been given without hypothesis. We need not therefore inquire into the correctness of the rulings of the court. Though several of the charges given are subject to criticism, they could have done no injury.

Affirmed.