# Ensley Railway Co. v. Chewning.

*Action against Railroad Company for Damages on account of Personal Injuries.*

1. *Averments of negligence; pleadings construed against pleader.*—In an action to recover damages for personal injuries, general averments of negligence are sufficient, without defining the *quo modo*, or specifying the particular acts of diligence omitted, when simple negligence constitutes a cause of action, as where the person injured was a passenger; but, where the complaint does not show whether he was a passenger, an employé, or 'a mere trespasser, it will be presumed that he was a trespasser, who can only recover for injuries caused by reckless, wanton, or intentional negligence, and such negligence must be alleged, or must be shown by the facts stated.

2. *Negligence in not providing platforms or lights.*—It is the duty of a railroad company, without an order from the Railroad Commission, to provide platforms, or suitable substitutes therefor, at stopping places where it is accustomed to receive and discharge passengers, and to furnish proper lights when trains arrive or depart in the night; and the neglect of this duty is negligence.

3. *Dummy-engines on railroads; cautionary signals required by statute.* The Ensley Railway Company, whose trains are operated by dummy-engines, is a railroad company within the statutory provisions requiring the whistle to be sounded or the bell rung at regular stopping places (Code, § 1144), so far at least as its road is outside of the city limits; and the failure to comply with these statutory regulations is negligence *per se*, entitling a person injured to damages, if he was not guilty of contributory negligence.

4. *To what witness may testify.*—A person who was present when plaintiff was injured by an approaching railway train, and who has testified that he did not hear any whistle or bell sounded, may further state that "there was nothing to prevent his hearing it."

5. *Speed of railroad train, and failure to check, as negligence.*—Approaching a stopping place on a railroad, where two roads branch, and where a crowd of persons are waiting for the approaching train, at the rate of seven or eight miles an hour, can not be assumed to be reckless, when it is shown that the train was drawn by a dummy-engine, and could be stopped within fifteen or twenty feet.

6. *Contributory negligence, and how overcome as defense.*—A person who, having been a passenger on a train of cars, is waiting at a stopping place for a train on a branch road, and while standing on the

[Ensley Railway Co. v. Chewning.]

track, thirty feet beyond the switch, looking for a train in one direction, is struck by an engine approaching from behind him, whose head-light can be seen from eighty to one hundred yards, is guilty of contributory negligence, which bars a recovery of damages unless overcome by proof of gross negligence—that is, reckless, wanton, or intentional negligence.

7. *Gross negligence; punitive damages.*—When gross negligence is shown, the jury may award exemplary damages; but the mere failure to provide a proper platform or light at a stopping place, where a branch road turns off, or to give the necessary signals by blowing the whistle or ringing the bell, is not gross negligence; and if the person injured was a mere trespasser or intruder on the track, being at a place where he had no right to be, gross negligence would be the failure to use reasonable care to avoid injury after his peril was discovered.

8. *Charge as to weight of positive and negative testimony.*—A charge to the jury as to the weight of positive as compared with negative testimony, not predicating equal credibility and means of knowledge on the part of the witnesses, is properly refused.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by G. A. Chewning against the appellant corporation, to recover damages for personal injuries, which necessitated the amputation of one of plaintiff's arms; and was commenced on the 27th February, 1890. The jury awarded the plaintiff $2,500 damages. There are 48 assignments of error, founded on adverse rulings of the court below on the pleadings and evidence, charges given, and the refusal of charges asked; but the points decided by this court do not require a statement of these matters in detail.

HEWITT, WALKER & PORTER, for appellant.

ARNOLD & EVANS, *contra.*

CLOPTON, J.—The defect in the first count of the complaint, assigned as cause of demurrer, consists in the omission to state facts showing a duty owing by defendant to plaintiff, and its negligent performance. After stating that the defendant was engaged in the business of a common carrier of passengers, propelling cars by steam, the count avers, generally, that the company "did, through its agents and servants, so carelessly, negligently, and improperly propel and drive an engine and train so being used by said defendant, that by and through the carelessness, negligence, and improper conduct of the said defendant by its agents and servants, the engine and train so being propelled and driven as aforesaid ran against plaintiff with great force and violence," knocking him down and injuring him as before stated. For aught that appears from the count, plaintiff may have been a passenger, or an

employè, or a mere trespasser. Admitting of more than one construction, that least favorable to plaintiff will be adopted.

While it has been said that the Code forms of pleading consist of general allegations of legal conclusions, rather than a statement of the particular facts which will support them, and though the statute requires that "all pleadings must be as brief as is consistent with perspicuity and the presentation of the facts or matter to be put in issue in an intelligent form;" yet the facts must be "so presented that a material issue in law or fact can be taken by the adverse party thereon."—Code, § 2664. Ordinarily, the rules of good pleading require that the facts, from which the conclusion of negligence is deducible, should be averred; not mere conclusions of law.—*City Council of Montgomery v. Gilmer*, 33 Ala. 116; *Phœnix Ins. Co. v. Moog*, 78 Ala. 284. This rule has been relaxed, from necessity, in cases where the cause of action consists in the non-performance or mis-performance of duty. In such cases, the rule has been thus stated: "When the *gravamen* of the action is the alleged non-feasance or mis-feasance of another, as a general rule, it is sufficient if the complaint avers facts out of which the duty to act springs, and that the defendant negligently failed to do and perform, &c.; not necessary to define the *quo modo*, or to specify the particular acts of diligence he should have employed in the performance of such duty." The reason given is, "what the defendant did, and how he did it, and what he failed to do, are generally better known to the defendant than to the plaintiff; and hence it is that, in such cases, a general form of averment is sufficient."—*Leach v. Bush*, 57 Ala. 145. Under the rule, as thus stated, a general averment of negligence has been held sufficient, when the complaint averred that the plaintiff sustained the relation of passenger to the railroad company, or was an infant of tender years, not capable of contributory negligence, or that the injury was to stock.—*L. & N. Railroad Co. v. Jones*, 83 Ala. 376; *Mobile & Montgomery Railway Co. v. Crenshaw*, 65 Ala. 566; *S. & N. Ala. R. R. Co. v. Thompson*, 62 Ala. 494. The statement of either of the foregoing facts has been regarded as a sufficient averment of facts showing the duty to act; but, in no case, except in *Alabama & Florida R. R. Co. v. Waller*, 48 Ala. 459, has a general averment of simple negligence been held sufficient, when not accompanied by an averment of facts from which the duty originates. In that case, the death of plaintiff's intestate resulted from a collision. The complaint, as in this case, did not state that the decedent was a passenger or employè, or had any connection with the railroad company. The ruling, that the complaint contained a

proper statement of facts, was based on the erroneous principle, that the collision itself, and the consequent death of the plaintiff's intestate, were facts sufficient to create a presumption of negligence, for which the defendant was responsible. Under our decisions, a trespasser can not maintain an action against a railroad company for injuries sustained while trespassing on its road-bed, unless such injuries were caused by reckless, wanton or intentional negligence. If a complaint affirmatively shows that the plaintiff is a trespasser, an actionable injury is not shown unless alleged to have been caused recklessly, wantonly, or intentionally. The presumption of negligence of such character and degree does not arise from the mere fact of injury to a trespasser. The count, failing to aver any relation or connection betwen plaintiff and defendant which creates the duty to use the highest degree of care, should therefore be construed as if he were an intruder. It may be, that had the count averred the engine and train were run against plaintiff by reckless, wanton or intentional negligence, it would have been held sufficiently certain—comporting with our system of pleading—though no special acts or omissions constituting the negligence were averred. But when, in such case, the complaint avers simple negligence, it is insufficient, the same as if it had affirmatively shown that plaintiff was a trespasser.

Neither can the doctrine of error without injury be applied, when the defendant is compelled to take issue on an insufficient count; especially in view of the fact, that the court refused to instruct the jury that plaintiff could not recover under the defective count.

The correctness of the charges given, and the refusals to charge as requested by defendant, must be determined with reference to the evidence. The following facts may be stated as having a bearing on all of them. Defendant operated a main line from Birmingham to Ensley, and a branch line to Coalburg. Plaintiff, who was a passenger from Birmingham to Coalburg, left the train at the place where the main and branch lines met, called "the junction," for the purpose of taking the train to Coalburg, where he waited a half hour for its arrival. It was dark at the time of his injury. The place was in the woods, no houses near, and no depot, platform, or light. At the time he was struck, plaintiff was standing on the cross-ties of the track of the Coalburg line, with his back in the direction from which the train was coming, looking at the train, which had gone to Ensley and returned. As to this, however, the evidence conflicts, some of the defendant's witnesses testifying that he was running to meet the Coalburg train.

[Ensley Railway Co. v. Chewning.]

The court admitted, against the objection of defendant, testimony that there was no station or platform erected, or light furnished at the junction ; and instructed the jury that it was the duty of defendant to provide sufficient light at night at its regular stations or stopping places, at and about the time of the arrival and departure of trains; and if the place where plaintiff was struck was a regular station or stopping-place, and defendant provided no light, this would constitute negligence, and if it proximately caused or contributed to plaintiff's injury, and he was not guilty of contributory negligence, the defendant is liable, and the jury should so find.   Defendant contends, that it owed no duty, by the common law, or by statute, unless ordered by the Railroad Commission, to erect a station or platform, or to furnish light at the location, and under the surroundings.   We are not prepared to say that it is the duty of a railroad company to provide sitting or waiting rooms and platforms at all their stopping-places; but, from the general duty to provide safe and convenient modes of ingress and egress to and from its cars, arises the specific duty to have the place, at which the company is accustomed to receive and discharge passengers, properly constructed for such purpose, and to provide platforms, or other safe and suitable substitute, when necessary to the due performance of the general duty; also, to furnish lights when trains arrive or depart in the night time.—*Ala. Gt. So. R. R. Co. v. Arnold*, 80 Ala. 600; s. c., 84 Ala. 158. ' The statute making it the duty of every railroad company to have sitting or waiting rooms, and to light the same, the platform and yards, when required by the order of the Railroad Commission, does not supersede or abrogate the common-law duty to erect platforms and furnish lights when necessary.—Acts 1886–7, 74.   The statute has special reference toward providing sitting or waiting rooms with proper accommodations, and to the time during which such rooms, platforms and yards shall be lighted ; also, to provide a law under which the company may be compelled to furnish such accommodations ; as to lights, the regulation of a recognized existing duty, and its performance. Under the evidence, it may be difficult to see how the want of a platform contributed, in the slightest degree, to the injury of plaintiff ; but, there being no waiting room, or other like accommodation, it was natural to expect that persons assembled, waiting for the train, would not remain still, and as a light would afford opportunity to discover places of danger, we are not prepared to say that the evidence was wholly irrelevant.

Section 1144 of Code declares : "The engineer, or other person having control of the running of a locomotive on any

railroad, must blow the whistle or ring the bell at least one-fourth of a mile before reaching any public road crossing, or any regular station or stopping-place on such railroad, and continue to blow the whistle or ring the bell, at short intervals, until he has passed such crossing, or reached such station or stopping-place." Unquestionably, the junction, or point where the two lines of road met, was a stopping-place in the meaning of the statute. The main objection urged to the charge given by the court, asserting the duty of the engineer required by the statute, is, that the statutory requirements are not applicable to a dummy-line, the Coalburg train being propelled by a dummy-engine. We have lately decided in the case of the *Bir. Min. R. R. Co. v. Jacobs*, 92 Ala. 1877 that defendant is a railroad corporation within the meaning of the statute, at least so far as it operates its road outside of the city limits. It is well settled, that the failure to give the cautionary signals, or keep a proper look-out at such times and places, is negligence *per se*, entitling a person injured, who uses due care to avoid injury, to a claim for damages.—*Ga. Pac. R. R. Co. v. Blanton*, 84 Ala. 154; *So. & No. R. R. Co. v. Sullivan*, 59 Ala. 272.

It is not inappropriate to observe in this connection, that it was competent for the witness, Waymoth, who had testified that he did not hear any whistle or bell, also to testify "there was nothing to prevent his hearing it." This is the mere assertion of a fact; that is, there was nothing in the surroundings to prevent his hearing it; and is unlike the case of a witness testifying that he would have heard the whistle or bell if blown or rung—a mere conclusion, of which the jury is as competent to judge as the witness, the distance and absence of intervening obstacles being stated.

The duty to check the speed of trains is statutory, and only applies when the train is "entering any curve crossed by a public road, where he [the engineer] can not see at least one fourth of a mile ahead;" and is intended to prevent accident in the event of an obstruction at the crossing, unless it be in a city or town and regulated by municipal ordinance.—Code, § 1144; *Nash., Chatt. & St. L. R. R. v. Hembree*, 85 Ala. 481. It is true, that a rate of speed which would be the observance of due care and caution at places other than public crossings, or in a city or town, may become negligent when the train is approaching a station or stopping-place, where many persons are accustomed to congregate on the arrival of the train; especially in the dark.—*East Tenn. V. & G. R. R. Co. v. Deaver*, 79 Ala. 216. Under the evidence, it can not, however, be assumed, that running a train at the rate of seven or eight

miles an hour, which could be stopped within fifteen or twenty feet, is reckless.

Plaintiff testified that he and some friends were sitting on the switch ties near the switch toward Birmingham, when he heard a whistle, and some one saying "Here comes the dummy," he and his friends arose, and walked up the Coalburg track about thirty feet beyond the switch, and as he walked, he looked up the track to see if the Coalburg train was coming, but did not see it. He stopped between the tracks, and stepped on the ends of the cross-ties of the Coalburg track, looking at the Ensley train coming in; and after standing there a minute, or minute and a half, was struck by the engine coming on the Coalburg track. There was a head-light on the engine, which could be seen from two hundred and fifty to three hundred feet from where he was struck. The train was past due, and he was momently expecting it; but did not look while standing on the cross-ties. These facts being undisputed, it is manifest that plaintiff was guilty of contributory negligence, and the charges above considered, being based upon the hypothesis that plaintiff was not guilty of contributory negligence, may be regarded as abstract. But giving such charges, when they assert correct legal propositions, will not reverse the judgment.

While a person intending to take the train, awaiting its arrival, should not be regarded a trespasser, if he merely cross, or inadvertently step on the track in the dark, at or about the usual stopping-place; yet plaintiff, having walked up the track beyond the limits of the usual stopping-place, to meet the train, and having knowingly and voluntarily stepped and stood on the cross-ties, where he was not invited, and had no right to be, must be regarded as a *quasi*-trespasser, or, as we have said, was guilty of negligence contributory to his own injury. Such being the case, the real and material inquiry is, whether plaintiff was injured by the reckless, wanton or intentional negligence of defendant; for such negligence is requisite to overcome the defense of contributory negligence. The failure to have a platform, or furnish light, when needed, or to give the cautionary signals, or keep a proper look-out, is simple negligence, and insufficient to overcome the defense. Defendant owed plaintiff no duty to look out for and discover him at the particular *place* where he was struck by the engine. The duty which defendant owed appellant, was to use all the means in its power, after his perilous position was discovered, to avert injury, and a failure to do so is equivalent to reckless or wanton negligence. From the charges given at request of defendant, copied in the record, it appears that the trial court endea-

[Ensley Railway Co. v. Chewning.]

vored to restrict the investigation to this inquiry; and had it been so restricted, the case would have been greatly simplified. On this subject, the court, by request of plaintiff, instructed the jury, that, if the plaintiff was himself negligent, or at an improper place when he was struck; yet, if the engineer saw his peril in time to stop the train, and could have stopped it before the plaintiff was struck, and failed to do so, and plaintiff did not know of his danger, then the defendant is liable, and the jury should so find.

We have repeatedly held, that when persons in charge of a train discover the perilous condition of one on the track; though a trespasser, it becomes their duty to use reasonable care to prevent injury, and the failure to do so is recklss or wanton negligence.—*M. & E. R. R. Co. v. Womack*, 84 Ala. 149; *Frazer v. S. & N. Ala. R. R. Co.*, 81 Ala. 185. This is the proposition of the charge. But defendant insists, there is no evidence tending to show reckless, wanton or willful negligence. The insistence is rested on the ground, that if the engineer be believed, his evidence showed that he did everything in his power, after discovering plaintiff, to save him, and that his evidence is uncontradicted; and on the other hand, if his testimony be disregarded, then there is no evidence tending to show that plaintiff was ever discovered, or that the engineer did not make every effort in his power to prevent the accident; in either event, that the charge was abstract. Positive, direct evidence as to the time when plaintiff was first seen, and as to the skill and diligence used thereafter to avoid injury, is not indispensable; these facts may be proved by circumstances, and are inferences to be drawn by the jury, applying observation and experience, to whom the question was submitted. The charges requested by defendant on the subject of contributory negligence withdrew from the jury the question of reckless or wanton negligence, and the charges relating to negative and positive testimony, not predicating equal means of knowledge and credibility, were properly refused. *Sav. & Mem. R. R. Co. v. Shearer*, 58 Ala. 672. If the jury find that the plaintiff was injured by reckless, wanton or intentional negligence, this makes a proper case for awarding exemplary damages.—*Ala. Gt. So. R. R. Co. v. Arnold*, 84 Ala 159. Whether the other charges, requested by defendant, should have been given or refused, may be easily determined by the application of the foregoing principles.

Reversed and remanded.