# North Birmingham Railway Co. *v.* Liddicoat.

*Action Against a Railroad Company for Damages on Account of Personal Injuries.*

1. *Common carrier; custom of receiving and discharging passengers at a place other than a regular station.*—If a common carrier is in the habit, or has the custom, of receiving and discharging passengers at a place other than a regular station on its road, a passenger, who, knowing of such custom, attempts to board a train at such place, is as much justified in the assumption that the carrier's cars are in a safe condition, as he would be were he attempting to board them at a regular station.

2. *Action for damages; averments of complaint.*—In an action against a railroad company for injuries, alleged to have been suffered by the

plaintiff while attempting to board a train, by reason of a handle on one of the cars giving way, it is necessary that the complaint should aver that the plaintiff attempted to board the train at a station provided for passengers, or at a place where it is usual or customary to receive passengers, or that the plaintiff was invited or knowingly permitted to attempt to board the car, or that he was, in some manner, accepted as a passenger.

3. *Same.*—An averment in the complaint, that "plaintiff was in the act of getting on one of defendant's passenger cars as a passenger, as he had the right to do," is a mere statement of the pleader's conclusion, and no weight can be accorded it in determining the sufficiency of the complaint.

4. *Same; pleadings construed against the pleader.*—The averments in a complaint that the plaintiff attempted to board the train when it was a short distance south of where the defendant's road crosses another railroad, does not, by reason of the statute requiring all trains to stop before crossing the track of an intersecting road within one hundred feet of the crossing, raise the inference that the defendant's train was at rest when the plaintiff attempted to board it, it not being averred that the train was on a north-bound trip, and had approached within one hundred feet of the crossing

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This was an action brought by the appellee, William Liddicoat, by his next friend, against the North Birmingham Railway Company, to recover damages for personal injuries alleged to have been sustained by reason of the negligence of the defendant.

The allegations of the complaint and the facts, as disclosed by the record, are sufficiently stated in the opinion. The defendant interposed a demurrer to the complaint upon the following grounds: 1st. Because it does not allege that the defendant's train was at a station or regular stopping place, where passengers were received and discharged, when the plaintiff attempted to get aboard the train. 2d. Because it does not allege that the defendant or its servants knew or could have known that William Liddicoat was attempting to get aboard the train when he received the injuries complained of. 3d. Because the complaint shows that plaintiff was guilty of contributory negligence that was the proximate cause of the injuries complained of by him, and does not allege that the defendant was guilty of wanton or intentional negligence. The court overruled each of these grounds of demurrer, and the defendant duly excepted thereto. There was judgment for plaintiff, and defendant appeals.

GARRETT & UNDERWOOD, for appellant, cited *North Birmingham Street Railway Co. v. Calderwood,* 89 Ala. 247; *M.*

& C. R. R. Co. v. Womack, 84 Ala. 150; Ga. Pac. R. R. Co. v. Blanton, 84 Ala. 154.

CHAS. P. JONES and W. R. HOUGHTON, contra, cited L. & N. R. R. Co. v. Johnston, 79 Ala. 436; A. G. S. R. R. Co. v. Sellers, 93 Ala. 9; B. & O. R. R. Co. v. Kane, 69 Md. 11.

STONE, C. J.—Appellee, a minor between eleven and twelve years of age, sued appellant, a street railway company, operating cars with dummy engines, to recover damages for alleged injuries sustained by plaintiff while attempting to board one of appellant's trains. The train he attempted to board was going from the city of Birmingham to North Birmingham, and was approaching a point where the Birmingham Mineral Railroad Company's tracks cross appellant's tracks, when it came to a stop just before reaching the crossing, and then proceeded on its way. Appellant has passenger stations at short intervals along its road, one of which is located about two hundred feet north of the intersection of the two roads, but it has no station at the point where appellee attempted to enter its car. It was, however, a common, if not daily, occurrence for persons to take advantage of the momentary stoppage of the train as it approached the crossing, to board or alight from its cars, and it does not appear that this practice was ever prohibited, or objected to, by appellant, or its servants in charge of its trains. The habitual stopping of the train at this point was in consequence of the requirements of the statute, (Code, § 1145), and not for receiving and discharging passengers, though that had become a frequent, if not daily occurrence, as stated above.

On the 23d of March, 1891, appellee was standing on the side of appellant's track, either upon or near the roadway of the intersecting road, when appellant's train, consisting of an engine and two cars, approached the crossing, going north. One of the cars was an ordinary passenger coach, and the other an open car having running boards extending along each side, which furnished a step to passengers getting on or off the car. Appellee attempted to board one of the cars but fell, and one of the trucks passed over and crushed his leg, necessitating amputation. For that injury this suit was brought.

Whether appellee, when he attempted to board the train, was standing on the track of the intersecting road, and attempted to get on the car while the train was in motion, or whether he was south of the crossing and the train at

rest when he made the attempt, are questions as to which the testimony is conflicting. There is also direct conflict in the testimony as to the cause of appellee's fall. His statement is, that he undertook to board the open car while the train was at rest, south of the crossing, the open car being next to the engine; that he stepped on the running board and seized with his hand the arm or support attached to the car to assist passengers in getting in and out of the car; that one end of the arm or support broke loose from its fastenings and precipitated him upon the track.

The engineer, on the other hand, testified that he was looking at appellee when the accident occurred; that he saw him, as the train was passing, standing on the roadway of the Birmingham Mineral Railroad Company at its intersection with appellant's road, and that the box passenger coach being next the engine, appellee jumped on the rear steps of that car and seized hold of the railings; that he lost his hold and fell on the track and the front truck of the rear car passed over his leg; that the railing of which he took hold did not break loose, and was not out of repair. There is other testimony seemingly corroborative of each of these versions of the accident.

The averments of the complaint, so far as material to be noticed, are that "on the day and year aforesaid, at a point in North Birmingham on defendant's line of road, a short distance south of where the defendant's road crosses the Birmingham Mineral railroad, the plaintiff boarded, or attempted to board, or attempted to, and was in the act of, getting on one of the defendant's passenger cars, as a passenger, as he had the right to do; that the car the plaintiff was attempting to get on was an open car with a running board on each side for passengers to get on and into the car; that on each of the seats of said car was a handle or arm made and used for the purpose of enabling passengers to catch hold of the same to enable them to pull themselves into the car; that plaintiff caught hold of one of these handles or arms and was pulling himself into the car, when the handle or arm turned or broke, whereby plaintiff was thrown to the ground and under the car, and his leg was run over," &c.

There was a demurrer to the complaint which was overruled. The defendant then pleaded the general issue and contributory negligence on plaintiff's part. The errors assigned are the rulings of the court on the demurrer to the complaint, on the charges given and refused, and on the motion for a new trial.

It.may be declared as a general rule that the relations of carrier and passenger are founded in contract, either expressed or implied, made upon a valuable, but not necessarily a pecuniary consideration, "and when such relations bring one of.the parties into contact with a material agency which the contract requires the other party to supply, the law exacts of him who supplies that agency the duty of exercising care in its selection, maintenance in repair and operation."—2 Am. & Eng. Encyc. of Law, p. 739. The relation begins "when the contract of carriage having been made, or the passenger having been accepted as such by the carrier, he has come upon the carrier's premises or has entered any means of conveyance provided by the carrier." 2 Am. & Eng. Encyc. of Law, p. 244.

It is the duty of the carrier to provide safe and convenient stations, and means of ingress to and egress from its cars; and if a person has the *bona fide* intention of taking passage by a train and goes to a station at a reasonable time, he is entitled to protection in these respects, as a passenger, from the moment he enters the carrier's premises.

The carrier may, by proper notice, prohibit the receiving or discharging of passengers at other places than the stations provided by it, and persons attempting, uninvited, to board its trains at such other places, in the absence of wanton or willful negligence on the part of the carrier, act at their own peril until they have entered its carriage, or are accepted as passengers.

If, however, a carrier, is in the habit of receiving or discharging passengers at a place other than a regular station, or persons are invited or directed by its authorized servants to board, or alight from its cars at such other places, they have the right to presume that it is safe to board or quit the train at such place, unless the risk in doing so is so obvious that a man of ordinary care and prudence would not, under like circumstances, make the attempt.—*Balt. & Ohio R. R. Co. v. Kane*, 69 Md. 11.

It is immaterial for what purpose its cars are stopped at such place, other than a regular station, whether in consequence of a duty enjoined on it by law, as when approaching the track of an intersecting road, or arising from convenience or necessity in the usual mode of operating its trains. If the public are in the habit of entering or quitting its cars at such place, without objection from its agents or servants, such persons are entitled to the protection of all the duties imposed upon the carrier in receiving and discharging passengers at its regular stations, except in so far

as it may be relieved therefrom by obvious risks, incident to the nature and condition of such place of customary use. The customary use of such place for receiving and discharging passengers may become so generally known and well established as to impose upon the carrier the duty of maintaining such place in as safe and convenient condition as a regular station, and to authorize a passenger, without notifying the conductor, or other servant of the carrier, of his desire or intention to board the train, to presume that a reasonable opportunity will be afforded him for that purpose, and that it is safe to do so. A passenger attempting to board a train at such place, and under such circumstances, is as much justified in the assumption that the carrier's cars are in a safe condition, as he would be were he attempting to board them at a regular station; for the duty of the carrier to so maintain them attaches in all cases and under all circumstances where the relation of carrier and passenger exists either by express contract or by implication of law.

What has been said has no application to a person who, being at either a regular station, or a place of customary use for receiving and discharging passengers, has not a *bona fide* intention of boarding a train as a passenger, but simply intends or attempts to obtain passage without the knowledge and consent of the carrier's servants or employes, and without paying fare. Such a person would in no sense be a passenger, but a trespasser to whom the carrier would owe no higher duty than to refrain from wanton or willful negligence; or, upon discovering him to be in a position of peril, to employ such reasonable care, as the facilities at hand would permit, to avoid the threatened injury.—*L. & N. R. R. Co. v. Webb*, 97 Ala. 308; 12 So. Rep. 374; *M. & C. R. R. Co. v. Womack*, 84 Ala. 149.

But the failure of the carrier to maintain its cars in repair would not, as respects such person, be either wanton or willful negligence, however gross such negligence might be, and for an injury resulting under such circumstances, the carrier would not be answerable in damages to the person injured.

Whether or not a person is a passenger is generally a question for the jury, and, always so when different inferences may be drawn from the testimony.—*Brown v. Scarboro*, 97 Ala. 316; 12 So. Rep. 289.

There is testimony in the case before us tending to show that appellee was, when injured, attempting to board one of appellant's cars with the *bona fide* intention of riding thereon, upon paying the customary fare; while, on the other

hand, there is testimony tending to show that his attempt to board the train, at the time and place mentioned, was prompted by a mere boyish propensity; in common parlance, to "steal a ride," as he had done or attempted to do on other occasions; and if the testimony on another trial should be substantially as we now find it, the question will be one for the jury under proper instructions from the court.

It can not be affirmed as a universal proposition of law that it is negligence *per se* for a person to attempt to board a moving train. The age and physical condition of the person making the attempt, the rate of speed of the train, the nature of the car and of the place, and all the attendant facts and circumstances enter into the question; and while any one of these facts might possibly be sufficient to justify the conclusion of negligence as matter of law, ordinarily it is a question for the jury, the test being whether a person of ordinary care and prudence would, under similar circumstances, have made the attempt.—*Balt. & Ohio R. R. Co. v. Kane*, 69 Md. 11; *M. & E. Rwy. Co. v. Stewart*, 91 Ala. 421.

All the questions for review in this case may be solved when tested by the principles we have above formulated.

Taking up the demurrer to the complaint, and construing, as we must, the averments of the latter most strongly against the pleader, we are unable to declare that the complaint shows on its face that the relation of carrier and passenger legally existed between appellant and appellee at the time the alleged injury was suffered. It is not averred that appellee was attempting to board the train at a station provided for passengers, or at a place where it was usual or customary to receive passengers on its cars, or that appellee was invited or knowingly permitted to attempt to board the car by any authorized servant or employe of the company, or that he was, in any manner, accepted as a passenger. In the absence of averments showing an express contract of carriage, or of facts from which such contract is implied in law, no relation is shown to have subsisted between the parties at the time of the accident, that devolved upon appellant the duty towards appellee of maintaining its cars in repair. Failing in this respect, and there being no averment that the injury was caused by the wanton or willful negligence of the company, no cause of action is shown for which it is answerable to appellee.—*L. & N. R. R. Co. v. Hairston*, 97 Ala. 351; 12 So. Rep. 299; *Ensley Rwy. Co. v. Chewning*, 93 Ala. 24.

We are not unmindful of the averment in the complaint that "plaintiff was in the act of getting on one of the defendant's

passenger cars *as a passenger, as he had the right to do*," but these words are the mere averment of the pleader's conclusion. No facts are stated, and no weight can be accorded them in determining the sufficiency of the complaint. They are perfectly consistent with a most heedless attempt to board the train when in motion, and at a place not set apart by any order or usage of the company for receiving passengers. Moreover, there is an almost irresistable implication that when the attempt was made to board the car, the train was in motion.

There is a manifest distinction in this respect between the complaint in this case and that in *L. & N. R. R. Co. v. Jones.* 83 Ala. 377. In the latter, the averment that the plaintiff's intestate was a passenger is supported by the statement that she was in the defendant's coach, a position which, of itself, *prima facie* indicated the relation of passenger; while here, there is no fact averred in the complaint which indicates that appellee had become, or was in a position entitling him to become, a passenger in appellant's train at the time of the accident.

When we look to the averments of fact in the complaint, as controlled by the intendments against the pleader, it must be inferred from the complaint that appellee's attempt to board the train was at a place where he was not authorized or invited to make the attempt; that the cars were in motion at a rate of speed which would have deterred a man of ordinary care from making the attempt under like circumstances, and that in making such attempt appellee was a trespasser.—*Montgomery v. A. G. S. R. R. Co.*, 97 Ala. 305; 12 So. Rep. 170; *Ensley Rwy Co. v. Chewning*, 93 Ala. 24.

It is contended in argument for appellee that it must be inferred that the train was at rest, when appellee undertook to board it, because of the averment that appellee's attempt to board was made when the train was "a short distance south of where the defendant's road crosses the Birmingham Mineral Railroad," and because of the statutory requirement that trains shall be brought to a full stop before crossing the tracks of an intersecting road.

There are conclusive reasons why this argument can not prevail. Although the court takes judicial knowledge of the requirements of the statute, and it is averred in the complaint that appellee's train was south of the crossing, it is *not* averred that the train was on a north bound trip. Indulging the view most unfavorable to the pleader, as we must, the train at the time of the accident was south bound and, therefore, according to the complaint, had passed the

[Moody v. Alabama Great Southern R. R. Co.]

intersecting road, and, consequently, the point where it was required by the statute to come to a stop.

On the other hand, if we could assume the train was north bound, it is not averred it had approached *within one hundred feet* of the crossing, when plaintiff undertook to board it, that being the distance from the crossing at which it was required by the statute to come to a full stop. The averment that the train was "a short distance south of where the defendant's road crosses the Birmingham Mineral Railroad" is not the equivalent of an averment that the train was within one hundred feet of the crossing. This last fact is not necessarily implied in the averment made. The inference does not arise, as matter of law, from the facts averred in the complaint, that appellant's train was at rest when appellee attempted to board it, but, as we have shown, the intendments on demurrer are to the contrary.

It results from the foregoing principles that the first and second grounds of demurrer to the complaint should have been sustained; and in view of the intendments against the pleader, as above indicated, it may be the third ground of demurrer should have been sustained, notwithstanding contributory negligence is ordinarily matter of defense. We cite the following authorities : *L. & N. R. R. Co. v. Hairston,* 97 Ala. 351; 12 So. Rep. 299; *Montgomery v. Ala. G. S. R. R. Co.,* 97 Ala. 305; 12 So. Rep. 170; *Ensley Rwy. Co. v. Chewning,* 93 Ala. 24.

The charges given and refused by the court, on which the remaining assignments of error are based, need not be specially noticed. The principles we have announced will furnish sufficient guide on another trial.

For the error of the City Court in overruling the demurrer to the complaint, its judgment is reversed and the cause is remanded.