# James M. Brown & Co. *et al. v.* Scarboro.

*Action against Common Carrier for Injuries to Passenger.*

1. *Passenger does not lose his character as such by performing work on train.*—When a passenger on a railroad train at the request of a fireman undertakes to clean the headlight on the engine, he does not lose the character of a passenger.

2. *Contributory negligence.*—If a passenger leaves his place on a car where it is customary for passengers to ride, and at the request of a fireman commences to clean the headlight of the engine, at which place he received the injury complained of, he was guilty of negligence, and it should have been submitted to the jury to determine if such negligence proximately contributed to the injury, and if so to further determine if the conduct of the defendant was wanton and intentional, or so reckless as to be the equivalent thereof.

3. *Implied invitation to board a train as passenger must arise from circumstances created by the carrier.*—Where it appears that the plaintiff having a pass over defendant's railway to Troy, hearing the call "All out for Troy," got on the train which moved in the opposite direction to a water-tank for water for the engine, and was injured before the train returned to the station, the relation which plaintiff occupied to the railroad, whether as passenger or trespasser will depend on his reasonable belief that the train was about to depart for Troy, justified by some conduct on the part of defendant's officers or servants, having control of the movements of the train.

4. *Failure to order person off train is not permission for him to be there.* The failure of those in charge of a train on which a person had wrongfully taken passage to warn him to get off, cannot be construed into a permission to become a passenger on the train.

APPEAL from Montgomery Circuit Court.

Tried before Hon. JOHN P. HUBBARD.

Action by Simon Scarboro against James M. Brown & Company and the Alabama Terminal & Improvement Company to recover damages for injuries alleged to have been received while a passenger on a construction train furnished

[James M. Brown & Co. et al. v. Scarboro ]

by the latter, but controlled by the former. Exceptions were taken by the defendants to portions of the oral charge, as follows : (1) "If the plaintiff had .a pass which authorrized him to go upon that train to Troy, and that was the train they usually rode upon in being carried to Troy or other points, and the plaintiff reasonably believed, and the circumstances were such as to lead him to believe, when the train went to move out from that siding, that it was then going to Troy, or was preparing to go to Troy, and he got on board the train, and was not warned or cautioned not to go upon that train, and the invitation had been said or stated "All out for Troy," or that, in substance, and he got upon the train under such circumstances reasonably believing that he should do so in order to go to Troy, he was rightfully upon the train, whether it was in point of fact designed to go to the tank or not. Now, you will decide whether he was rightfully upon the train." (2) "I further instruct you that if he was upon the train, and was not there rightfully, in the sense in which I have just instructed you would constitute rightful, still if he was upon the train, and the purpose of that train was to prepare to go to Troy, and the employees of the defendant Brown (those in charge of the train,) knew he was upon it, and permitted him to remain without giving him the caution that it was improper for him to be there, or that the train was going to the tank, and not to Troy, the defendant cannot avail himself on this occasion of the proposition that he was not rightfully upon the train, in the manner I have instructed you he would be rightfully there. It was their duty to have cautioned him. Now, you decide when you look at all the evidence in this case whether the plaintiff was on the train rightfully, in the first place, or whether he was permissively, in the second, by not warning him off; and, in this instance, I instruct you it was not necessary for the conductor or fireman to know him individually to have it become their duty to notify him that he was not properly in that place, because if men were upon the platform, whether they knew their names or not, and they were permitted to remain there, through the negligence of these persons to warn them that they were not to go to Troy, but to the tank; hence it was• not a trespass upon the part of the plaintiff to be there, if you find that he had a pass which entitled him to be on that train to ride to Troy. Now, what is your conclusion as to whether he was rightfully or wrongfully upon that train? If you find he was rightfully, in the meaning I have instructed you would be rightful to be

there, or under such circumstances as the defendant would not be able to avail itself of the proposition that he was not there rightfully, then the next question arises as to whether the accident was the result of the negligence of defendant. I have just instructed you, if it was, why then you shall find a verdict for plaintiff, unless there is some other matter in the case which instructs you differently." (3) "Now, it is insisted by the defendant that this plaintiff was negligent himself. Even if you find that he was rightfully upon the train, in the sense in which I have instructed you that he was or was not there, because he was standing upon the engine, I instruct you that if you find from the testimony in the case that there were 4 or 5 flat cars in front of that engine, and that that engine was being pushed in that direction out of that siding and was carried in that way out of the side track, and was on its way to the tank, and that, at the request of the engineer or fireman or other person in charge of that train, the plaintiff got up on the front of the engine to clean away or rub off the headlight or brass upon the engine, then it was not negligence on his part in being there, provided you find that the collision occurred by reason of the negligence of the defendant in failing to guard against engine No. 1. This is in view of the fact that there was no evidence in the case which shows that there was any passenger car or other place designated for those persons to enter for the purpose of being transported. "The defendant also separately excepted to the court's refusal to give each of the following written charges requested by them : (1) "If the jury believe the evidence, they will find for the defendants J. M. Brown and J. M. Brown & Co." (2) "If the jury believe from the evidence that the plaintiff and three others, viz : Harris, Robinson, and James, had a joint written pass which entitled them to ride from Ramer to Troy, over the road under the management of J. M. Brown & Co. ; that the plaintiff got on a flat car while on the side track, and before the train started for Troy ; that the engine and flat cars were detached from the conductor's caboose, and directions given by the conductor to the engineer to take the engine to the water tank in order to "water up," preparatory to going to Troy, and persons going to Troy were directed to wait at Ramer until the engine returned from the water tank ; that, after these directions were given, plaintiff remained on the flat car until the engine moved out of the switch, and then got on the bumper of the engine, and was engaged in rubbing brass on the engine when the collision occurred and at

the time he was injured; and that the other persons entitled to ride under said pass remained at Ramer, and were not injured,—then, upon this state of facts, if believed by the jury, without more, the plaintiff is not entitled to recover in this case; the pass which the plaintiff held not entitling him to ride on the engine, even with the consent or at the invitation of some employe of J. M. Brown & Co." (3) "There is no evidence that J. M. Brown & Co. ever permitted or authorized the plaintiff to ride on an engine while in their service; and, if the jury believe from the evidence that the plaintiff was riding upon the engine at the time the collision occurred and the injury was sustained with the consent or at the invitation of the fireman on said engine, then such consent or permission was not binding on the defendants J. M. Brown & Co., and the plaintiff was not lawfully upon the engine when he was injured. His pass did not entitle him to ride on the engine. He was a wrongdoer the moment he stepped his foot upon the engine, and so continued until he was injured; and upon this state of facts, if believed by the jury, without more, the plaintiff is not entitled to recover in this action." (5) "If the jury believe from the evidence that the plaintiff was riding on the front of the engine, and was injured while there by reason of the collision, he cannot recover in this action." (6) "If the jury believe from the evidence that the plaintiff was riding on the front of the engine at the time he was injured, then the plaintiff can not recover if there were any other persons who were riding on the flat cars who were not injured." (7) "If the jury believe from the evidence, that the plaintiff had a pass to go to Troy, such pass did not entitle him to ride upon the engine; and if he was injured while riding upon the front of such engine, by reason of the collision, then the plaintiff cannot recover, if his being on said engine contributed to said injury, or was a concurrent cause of the loss of his leg." (8) "If the jury believe from the evidence that Simon Scarboro had a pass to Troy, and that, before the train went to Troy, it was necessary for the engine to go to the tank for water, and that the caboose was separated from the train before the engine and flats went to the tank for water, and left at the station with the conductor; and if the jury believe from the evidence that the plaintiff knew, or ought, by the exercise of ordinary care, to have known, that said engine and flats were going to the tank, for water, and would return to the station, where he could with safety board said train for his destination,—then the plaintiff cannot recover in this action, unless the conductor instructed him to board the same."

[James M. Brown & Co. et al. v. Scarboro.]

STRINGFELLOW & LEGRAND, for appellants, contended that riding on the engine was contributory negligence, citing *McDaniel v. Railroad Co.*, 90 Ala. 67; *Penn. Railroad Co. v. Lawson*, 92 Pa. St. 28: s. c. 37 Am. Rep. 651; *Railroad v. Jones*, 95 U. S. 443. That the fireman had no authority to invite plaintiff on the engine, Beach. on R. R. § 995; R. R. Co. 112 Ind. 26; *Railroad v. Schaufler*, 75 Ala. 142; *Railroad v. Chewning*, 93 Ala. 30, and other authorities.

SAYRE & PEARSON, for appellee, insisted that when the engine was pushing the cars it was not the most exposed situation, citing *Pool v. Railroad*, 56 Wis. 227; *Creed v. Railroad*, 86 Pa. St. 139; Hutch. Carriers §§ 651, 654; 2 Am. & Eng. Encyc. 766; *R. R. v. Stewart*, 91 Ala. 424; that the collision was reckless negligence, *Railroad v. Lee*, 92 Ala. 271, *Ib.* 206.

HEAD, J.—The question of appellant's liability for the acts and omissions of the persons operating the colliding trains which inflicted the plaintiff's injury is raised by a charge requested by appellants and refused by the court, but the point is not insisted on in the argument of counsel, and we will not notice it, further than to say, that the same question was raised upon the same facts and decided by this court adversely to appellants, in the case of the present plaintiff, Scarboro, against The Alabama Midland Railroad Co., 10 So. Rep. 316; s. c. 94 Ala. 497.

Plaintiff sues as a passenger. If he was not such there could be no recovery, by reason of the variance between the allegations and proof, whatsoever may have been the fault or negligence of the defendants causing the injury. It is insisted by appellants that though he may have been rightfully on the train, as a passenger, while riding on the car on which it was customary for passengers to ride, yet he destroyed his character as such and became a trespasser when, on request of the fireman, he left his place on the car and got upon the engine and undertook the work of rubbing the headlight, thus exposing himself to increased danger. We can not assent to the proposition. A passenger does not lose his character as such by negligently assuming a dangerous position on the train. He may thereby, in case of injury, subject himself to the imputation of contributory negligence barring a recovery for the injury produced by the simple negligence of the railroad company, but he is nevertheless a passenger still. In such case there is no variance in respect of his relation to the defendant.

Vol. 97.

[James M. Brown & Co. et al. v. Scarboro.]

It is also insisted that it was a question for the jury whether the plaintiff became a passenger, at all, on the train upon which he was injured; and that charge 8 requested by appellants should have been given. The evidence upon the point is substantially as follows: It is conceded that plaintiff had a pass from the proper authority of the defendants to ride from Ramer to Troy on that train. There is no evidence that the running of this train was governed by any fixed schedule, or that any particular time had been designated or made known at which it would leave Ramer on the day of plaintiff's injury. The record is wholly silent on that subject. Plaintiff arrived at Ramer about an hour before the train left the station. At that time the engine was standing on the siding with five flat cars in front and four behind it. It was a construction train. A minute or two before the train started plaintiff heard some one call out twice, "all out for Troy," and he thereupon got upon the flat car immediately in front of the engine, and the engine moved off, pushing the five flat cars which were in front, but leaving standing on the side-track those that were behind it. He did not look to see who called out, "all out for Troy." In point of fact, the train was not then departing for Troy, but for a water tank two and one-half miles, in a different direction from Ramer, to get water, and intended returning to Ramer as soon as the water was obtained, and then leave for Troy. The collision occurred on the way to the tank. Whether going to the tank or to Troy, it was necessary for the train to move from the siding in the direction it did, as there was but the one end connection of the siding with the main track. Plaintiff testified that he knew the engine had to get water, but did not know it was going to the tank for water when it pulled out; that he did not know where it was going; did not know the nearest water tank was two and one-half miles this side of Ramer. He testified that there was a water tank on the way to Troy. He further testified that the engine always cut loose from all the cars when it went after water. He had been employed by defendants, in the construction of the road, about four months, but had quit work and had been paid off. His duties, when so employed, were to shovel dirt and load cars. When he boarded the train at Ramer there were a good many persons standing about the side-track but plaintiff did not know them. About a dozen persons got aboard the flat cars in front of the engine and were there when the collision occurred. Some of them were injured and one killed. There was a caboose on the side-track at Ramer, and it was customary to attach

it to the train before moving from point to point, and the train was not ready for Troy until it was attached. Plaintiff testified that he did not know where the caboose was; that it was there but he did not pay any attention to it; that there were no seats on the train, and it was the custom to sit on the edge of the cars, and when he got aboard he took his seat on the edge of the car and was sitting there when the fireman, a short while after the train started, requested him to get on the front part of the engine and rub the headlight, which he did, and was doing when the collision occurred. The engineer testified as follows: "At the time of the collision the engine was going towards the water tank about two miles from Ramer. I had received instructions from Mr. Hollis, the conductor, in tones loud enough for those around to hear, to take the engine to the water tank preparatory to going to Troy. I was on the engine when I received said orders. The conductor was standing near the engine. I do not say that plaintiff was where he could hear said orders, nor that he was informed of the necessity to go to the tank for water." The conductor testified that there was about seventy-five persons about the engine when he told the engineer to go for water, and that the engine was making a "right smart fuss." Plaintiff testified that he did not hear the order. It was shown that the conductor did not go with the train and that he did not know that plaintiff was aboard; nor did the engineer know plaintiff. The plaintiff testified that he knew the conductor when he saw him, but that he did not see him before he got on the train; that he was not on the train at the time of the collision and witness did not know where he, the conductor, was until after the accident.

It is very clear that if plaintiff, when he boarded the train, knew, or under the circumstances, ought to have known, that the train was not then about to depart for Troy, but was going to the tank in another direction, for water, with the intention of returning to Ramer, before departing for Troy, his pass gave him no authority to board it or ride thereon; and that, therefore, he was not, at the time of the injury, a passenger, but a trespasser, and can not recover under the present complaint, let the defendant's negligence be whatsoever it may. But, if under the then condition and situation of the train, and the actions and conduct of the train officers, viewed in the light of the circumstances surrounding them at the time, the plaintiff was justified in believing, and did honestly believe that the train when he boarded it was about departing for Troy, and if it was impracticable

[James M. Brown & Co. et al. v. Scarboro.]

for him to get off after he discovered his mistake, then he was a passenger and entitled to sue as such.

We have considered the evidence above set out, and hold that it was a question for the jury whether plaintiff was a passenger or not, under the rules above declared, and that charge 8, which the court refused, ought to have been given; and the principle here announced determines that there was error in the first and second portions of the court's oral charge, to which exceptions were reserved. As we have already indicated, the reasonable belief of plaintiff that the train, when he boarded it, was about to depart for Troy, must under the circumstances of this case have been justified by some conduct on the part of defendants' officers or servants having control or direction of the trains' movements. In other words, the circumstances justifying such belief must have been of the defendants' creation. If the defendants or their agents had done nothing, to justify the belief, and plaintiff acted upon what was said or done by others which was not authorized by defendants or their servants in charge of the train, or which was not at the time expressly or impliedly ratified or acquiesced in by them, the defendants can not be held responsible for the existence of his belief. The evidence does not show who it was who called, "All out for Troy," nor where he was at the time, and it was at least a question for the jury whether any servant of defendant heard or knew that such a call had been made. Again, there is no evidence that any officer or agent having control of the train had any knowledge that plaintiff had a pass to ride or expected to ride on that train to Troy, or elsewhere; and it was at least a question for the jury whether either of them knew plaintiff intended to, or had boarded the train; yet the portions of the oral charge under consideration assumed that they did, and asserted, in effect, that plaintiff should have been warned not to go on that train. These remarks, we think, will serve to point out the objectionable features of the portions of the charge under review.

The evidence in this case is undisputed, that the customary and proper place for persons having passes from defendants to ride on their train was on a car. They had no right to ride on the engine, where plaintiff was riding when he was injured. It is not shown that the fireman had any authority to invite him to ride there, and presumptively he had none. Plaintiff does not claim that he was an employe of the defendants, rightfully employed to rub the head-light. He sues in an entirely different character, to-wit, as a pass-

enger. Hence, there can be no pretense, as a support of this action, that the fireman was authorized to employ and did employ him to do the work he was engaged upon. From his own standpoint, he was a passenger on the train who left his proper position on the car and took a place on the engine without being assigned to that place by the conductor or any person authorized thereto. He was, therefore, guilty of negligence in taking a place on the engine. If this negligence on his part proximately contributed to the injury he received, he can not recover, unless the collision was caused by the wanton, or intentional negligence or misconduct of the defendants or their servants, or such reckless misconduct as was the moral equivalent thereof. Under the evidence these were questions for the jury, viz: Did plaintiff's negligence proximately contribute to the injury, and if yea, was there wanton, reckless or intentional negligence or misconduct on the part of defendants, or their servants, as above described, causing the injury? The third portion of the court's oral charge to which exception was reserved was, therefore, erroneous.

As we have said, it was a question for the jury whether plaintiff was a passenger on the train or not at the time he was injured. The undisputed evidence shows that defendants were guilty of negligence causing the injury; but whether plaintiff's negligence proximately contributed to the injury, and if it did, whether that defense was overcome by wanton, reckless or intentional negligence or misconduct on the part of defendant's servants, as above stated, being questions for the jury, the general affirmative charge requested by defendants was properly refused.

What we have said will sufficiently indicate the errors of charges 2, 3, 5 and 6, requested by defendants.

The seventh charge requested by defendants ignores the inquiry whether plaintiff's contributory negligence, therein correctly hypothesized, was overcome by wanton, reckless or intentional misconduct of defendants, which there was evidence tending to show, and for that reason was properly refused.

For the errors pointed out the judgment of the Circuit Court is reversed, and the cause remanded.

Reversed and remanded.