# Beyer v. Louisville & Nashville Railroad Co.

*Action against Railroad Company by Parent to recover Damages for Alleged Negligent Killing of Minor Son.*

1. *Action against railroad company; contributory negligence.*—Where a person boards a freight train, either as a trespasser, a passenger, or licensee, and while riding on the top of a box car, sitting on the edge with his feet hanging down the side, the said car becomes derailed and is wrecked, by reason of which said person is so injured that he dies, he is guilty of contributory negligence which precludes a recovery against the railroad, unless it is shown that the injury was wantonly or willfully inflicted.

2. *Same; same; wanton or willful misconduct; case at bar.*—In an action against a railroad company to recover damages for the death of a person resulting from injuries received while riding on one of defendant's freight trains, and which injuries it is alleged in the complaint were caused by the wanton or willful misconduct of defendant's employés, it was shown that while the deceased was riding on one of the box cars in the train, sitting on the edge with his feet hanging down, said car was derailed, causing the injuries complained of. The only evidence touching the cause of the derailment was the testimony of a witness who boarded the train with the deceased, to the effect, that the flat car immediately in front of the car upon which deceased was sitting was loaded with sewer pipes, placed endways, and held in said car by standards on the sides thereof, that one of these standards dropped out on the trip, and upon his telling the conductor of its loss and that he ought to stop the train and fix said car, said conductor refused to do so, and one of the pipes got crossways and fell off the car. *Held:* That there was an utter failure to establish the relation of cause and effect between the condition of the car and the derailment, and the evidence introduced did not sustain

[Beyer v. Louisville & Nashville R. R. Co.]

the averments of the complaint; and that, therefore, the court properly gave the general affirmative charge at the request of the defendant.

APPEAL from the Circuit Court of Cullman.

Tried before the Hon. H. C. SPEAKE.

This action was brought by the appellant, Frank Beyer, against the Louisville & Nashville Railroad Company, to recover damages for the death of his minor son, Joseph Beyer, which was alleged to have been caused by the negligence of the defendant or its employés. The facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the court, at the request of the defendant, gave to the jury the general affirmative charge in its behalf, to the giving of which charge the plaintiff duly excepted.

There were verdict and judgment for the defendant. The plaintiff appeals, and assigns as error the several rulings of the trial court on the evidence, to which exceptions were reserved, and the giving of the general affirmative charge in favor of the defendant.

COFER & BROWN, for appellant.—The general affirmative charge should not have been given for the defendant, if the failure of its employés to stop the train and arrange the sewer pipe on the unsafely loaded cars was the approximate cause of the injuries which resulted in the death of plaintiff's son, who was killed by negligence only by reason of getting aboard the defendant's train; and if the defendant's employés further knew that his son was aboard said train and could not get off with reasonable safety, then the defendant is liable, and these questions should have been left to the jury. The mere fact that a person is guilty of a mere civil trespass does not justify the owner of the property trespassed upon, or his servants, in taking life, if it can be avoided by the exercise of reasonable care. Although the party injured is a trespasser, the company will be liable if, after the discovery of the danger, the accident could have been avoided, or, if the failure to discover the danger was the result of carelessness of the company's employés.—1 Thompson on Negligence, 448; 6 Amer. & Eng. Railway Cas. 17, 20; *Tanner v. L. & N. R. R. Co.*, 60 Ala. 621.

THOS. G. JONES, *contra.*—1. The plaintiff's son was not an employé of the railroad. Herrin having no authority to employ repairers for the company, Beyer's going, at his request, to repair the pump, did not make him an employé and put him in the defendant's service. *Flower v. R. R. Co.*, 69 Pa. St. 210. Neither was the plaintiff's son a passenger on said train.

.2. The evidence is uncontradicted, that casual pump repairers, such as Beyer claimed to be, were not entitled to ride without a special permit, and it is not pretended that Beyer had such a permit. Beyer was, therefore, a naked trespasser, and not even a licensee.—*R. R. Co. v. Campbell*, 41 Amer. & Eng. R. R. Cas. 100 ; *Chicago, &c., R. R. Co. v. Michel*, 83 Ill. 427 ; *Duff v. Alleghany Valley R. R. Co.*, 2 Amer. & Eng. R. R. Cas. 1. He was not even a licensee, according to our decisions.—*McCauley v. R. R. Co.*, 93 Ala. 356.

3. A trespasser by boarding a moving train, without the conductor's knowledge, and then notifying him of his presence and demanding to be put off at the next station, although the train does not stop there, can not secure for himself the rights of a passenger, because the conductor does not stop his train at that point ; or immediately eject the trespasser ; or waits until the train reaches one of its regular stopping places before doing so. Such "passive acquiescence" in the trespass, works no change in the relation of the parties.—*Sutton v. Railroad Co.*, 66 N. Y. 243 ; *C. & A. R. R. Co. v. Randolph*, 53 Ill. 510 ; *Eaton v. Delaware, &c., R. R. Co.*, 57 N. Y. 382.

4. Plaintiff's intestate being a trespasser on the freight train, the defendant owed him no duty, except the negative one of refraining from any intentional, willful, or wanton injury.—*McCauley v. R. R. Co.*, 93 Ala. 356.

5. The conductor's failure to stop the train and fix the pipe and going ahead on the idea that no harm could result, at most was a mistake of judgment, and a mistake of judgment can not be made a substitute for willfulness or wantonness, or intentional wrong. At most, the conductor's conduct was negligent, and did not amount to willfulness or wantonness.—*L. & N. R. R. Co. v. Markee*, 103 Ala. 160 ; *K. C. M. & B. R. R. Co. v. Crocker*, 95 Ala. 433 ; *Railway Co v. Lee*, 92 Ala. 262,

The burden was on the plaintiff as to this, and also to show that the sewer pipes were the proximate cause of the derailment. There is not the slightest proof that the sewer pipes falling had anything to do with the accident.

6. Under the circumstances, it was the manifest duty of the lower court to give the affirmative charge for the defendant.—*McCauley v. R. R. Co.*, 93 Ala. 356. This was proper, not only because the evidence showed that the intestate was unlawfully on the train and the injury was a mere accident,—neither wanton nor intentional, even if negligently caused; but also because an injury was proved from a wreck at a different time and manner from that set forth in complaint.—*L. & N. R. R. Co. v. Pryor*, 90 Ala. 32.

HEAD, J.—G. H. Herrin was an employè of the appellee company, having charge of the operation of the pump at Phelan's station, used for filling the tank there, from which the locomotives, on the road, were supplied with water. The company had in its employ a pump repairer whose duty it was to make all repairs on the pumps which Herrin, himself, could not make, and he had a general pass to ride on all trains in the discharge of his duties. Herrin had no authority to employ special workmen to make such repairs, except at his own expense. The pump at Phelan's becoming out of order, Herrin, without special authority, employed the plaintiff's minor son, Joe Beyer, who was a mechanic residing at Cullman, on the line of defendant's road, about two miles from Phelan's, to repair it. To reach Phelan's, for the purpose of doing the work, Beyer, in company with one George Shelton, who had formerly been a brakeman on defendant's road, boarded a freight train of defendant at Cullman. The train consisted of a locomotive and twenty-two cars, with caboose in the rear. It did not carry passengers, and did not ordinarily stop at Phelan's. At Cullman it did not stop, but, when these parties got aboard, it had reduced its speed to that of about a man's walk. Beyer got on at about the fourth car from the locomotive and took his position on top of that car (a box car), sitting on the edge with his feet downward on the side. Shelton got on the fifth car, but did not remain there but passed down, from one car to the other, until he reached and took his position

on the caboose. After going a short distance (about one-fourth of a mile) the conductor (presumably in the caboose) asked Shelton where they were going. Shelton replied, "To Phelan's to fix the pump." The conductor responded, "Go tell the engineer," to which Shelton rejoined, "That is your business." Shelton further testified: "I told Bob (the conductor) where we were going, and he said he was going through there like hell scorching a feather." It does not appear that the parties boarded the train by authority of the conductor, or any one else. The train ran about fifteen miles (Beyer being still in his position on top. of the box car), when, for some cause unknown and unexplained, (except such explanation, if any, as may be inferred from what will presently be stated in reference to the manner one of the cars was loaded with pipe), it became derailed, causing its wreck, and by which Beyer was so injured that he died. The last five cars and the caboose remained on the track, and no one on or in them was injured.

Touching the cause of the derailment, the only evidence introduced proceeded from Shelton who was examined by the plaintiff and who testified as follows: "One of the cars on the train was loaded with sewer pipes. They were about 24 inches by 12 feet long, they were loaded endways of car, held on by standards; one standard was out on left side of car just ahead of the box car where Beyer was. This standard was gone before we got to Phelan's; there were three brakemen on the train; we lost one of these sewer pipes between Cullman and Phelan's. I said 'Bob (meaning the conductor) you ought to stop this train and fix that car.' I told Bob the condition of the load on the flat car and that he had better stop, and he said 'damn the sewer pipes, I am not going to stop this train.' I told him I would not ride behind a car in that condition. I jumped off and fell. One piece of the pipe was ahead of the other in an angle with the car; a car is thirty feet in length; a sewer pipe is twelve feet long. One of the pipes that was in the car got crossways and fell off between Cullman and Phelan's. The standards were on this car to keep pipes on with; when the standards were lost out there was nothing to keep pipes from rolling off." Shelton testified that he got off the train at

Cooper's Gap, but there is no evidence to show how far that is from the place of derailment. Further than as above stated there was no effort to prove that the sewer pipe, or the condition of the car containing it, in any way contributed to the derailment.

There was controversy between the parties as to the relation the deceased, Beyer, bore to the defendant whilst riding upon the train, and when injured—the defendant insisting that he was a trespasser, and the plaintiff that he was authorized and permitted by the defendant to ride upon its train for the purpose of fixing the pump; and the plaintiff attempted by sundry questions put to the witnesses, to show that, by custom on defendant's road, pump repairers, though specially employed by pump keepers to make particular repairs, were authorized to ride to the work on defendant's trains; and errors are assigned upon the refusal of the court to allow these questions.

We are of the opinion that it is not material to consider whether the deceased was a trespasser, a passenger or a licensee. If he were a trespasser he could not recover, except for a wanton or willful injury done him; if a passenger or licensee, he had no authority to take the extraordinarily dangerous position he did take on the train, instead of taking passage in the caboose, the appropriate and safer place for such persons; and in doing so he was, upon the undisputed evidence, guilty of negligence contributory to his injury, which was put in issue by appropriate plea; and he could not recover except on pleading and proof that the injury was wantonly or willfully inflicted.—*Brown & Co. v. Scarboro*, 97 Ala. 316.

The last count of the complaint, introduced as an amendment, charges, not only simple negligence, but, in the alternative, that the injury was caused by wanton or willful misconduct. No objection was made by demurrer, or otherwise, to the sufficiency of the count in this respect. So, the inquiry is, whether the evidence (all of which, upon which plaintiff relies, is hereinabove set out) tends to show such wanton or willful misconduct. Upon plain principles, we think it does not. The evidence consists alone of the testimony of Shelton, as above quoted, concerning the car loaded with sewer pipe. Upon examining his testimony closely, it will

be seen that the witness does not testify, even, that the condition of the car was dangerous or at all liable to cause a derailment, or other injury to the train. He repeats, simply, what he said to the conductor in the car, and the conductor's reply; affirming no fact tending legitimately to establish that the car was dangerous to the train, much less than that the conductor was guilty of a wanton and willful disregard of the safety of the train and of the lives of himself and others riding thereon. So far as any facts brought to view show, the apprehensions of Shelton, indicated by what he said to the conductor, may have been entirely unfounded, and the conductor justified in paying no attention thereto. If there had been evidence going to show that the condition of the car was manifestly dangerous to the safety of the train, what Shelton said to the conductor might have been very material as notice to him; and our conclusion might be different.

Again, as we have already said, there is not a semblance of evidence tending to establish the relation of cause and effect between the condition of the car and the derailment. The complaint alleged that the latter was caused by a pipe falling off, when the car was crossing a bridge, but there was no effort to prove the allegation.

It follows, necessarily, that the court was compelled to give the general charge requested by the defendant. It is a wise and just rule, firmly established by our decisions, that errors of the trial court which are affirmatively shown by the record to have done the appellant no harm, will not operate to reverse the judgment. We have carefully examined every question raised by the record touching the rulings of the court, either upon the pleadings or admission of testimony, and the conclusion is irresistible that the rulings were either correct, or, if they had been to the contrary, and in favor of the plaintiff, the result of the trial would, necessarily, have been as it was. In no phase, in which the case was presented, or attempted to be legally presented, either upon the pleadings or proof, could the defense of contributory negligence, arising upon the undisputed evidence, have been obviated. We will not encumber this opinion by a statement of the questions in detail, as they are governed by well settled principles, which it would serve no useful purpose to repeat.

Affirmed.